**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**
**Case No.: 1:15-cr-20545-JAL-1-LENARD/GOODMAN**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

GUILLERMO SANCHEZ-BADIA,

      Defendant.

_____/

**DEFENDANT'S MOTION TO REVOKE PRETRIAL DETENTION ORDER [D.E. 15]**
**AND INCORPORATED MEMORANDUM OF LAW**

Defendant, **GUILLERMO SANCHEZ-BADIA ("SANCHEZ")**, by and through his undersigned counsel, and pursuant to 18 U.S.C. § 3145(b), respectfully moves this Honorable Court for an Order revoking the Pretrial Detention Order, (D.E. 15), and as grounds therefor states as follows:

I.    <u>FACTUAL HISTORY</u>

**A.  <u>The Previous Case</u>[1]**

1.      On April 23, 2010, an Information was filed charging SANCHEZ with one (1) count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371 (Count 1), and one (1) count of mail fraud in violation of 18 U.S.C. § 1341 (Count 2).

2.      On April 29, 2012, SANCHEZ was released on his personal recognizance, with special conditions of weekly reporting to the District of Columbia Pre-trial Services Agency and surrendering his passport. (<u>See</u> Case No. 1:10-cr-00105, D.E. 9). The conditions of release permitted SANCHEZ to continue business visits to Puerto Rico. (<u>See</u> <u>id.</u>).

3.      Six days after the filing of the Information, on April 29, 2010, SANCHEZ entered

---

[1] Case No. 1:10-cr-00105 (hereinafter the "previous case").

his plea of guilty as to Count one (1), in violation of  18 U.S.C. § 371, and Count two (2) in violation of 18 U.S.C. § 1341.

4.      On November 1, 2010,  SANCHEZ was sentenced to a term of forty-eight (48) months' probation.

5.      On July 12, 2012, SANCHEZ' term of probation was revoked for failing to submit truthful and complete written monthly reports, and failing to complete two-hundred (200) hours of community service.  That same day, SANCHEZ was resentenced to a new period of forty-eight (48) months' probation.  (See Case No. 1:10-cr-00105, D.E. 36).

**B.  The Instant Matter**

6.      On July 16, 2015, an Indictment was returned against SANCHEZ, along with co-defendants Isabel C. Sanchez and Gustavo J. Giral, charging SANCHEZ with one (1) count of conspiracy to commit wire fraud in violation of 18 U.S.C. §  1349 (Count 1), seven (7) counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts 2 – 8), one (1) count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count 9), and fifteen (15) counts of money laundering in violation of 18 U.S.C. § 1956 (a)(1)(B)(i) (Counts 10 – 24) .

7.      The next day, on July 17, 2015, an arrest warrant was executed upon SANCHEZ. However, simultaneous with the execution of the arrest warrant, after being informed of SANCHEZ' serious medical condition, the arresting agents declined to take SANCHEZ into custody.

8.      On July 23, 2015, co-defendant Gustavo J. Giral and SANCHEZ made their initial appearances.[2]  Gustavo J. Giral, was released on a $500,000.00 personal surety bond.  (D.E. 14).

9.      That same day counsel for the Government notified the Court that it would be

---

[2] A transcript of the Initial Appearance is attached hereto as Exhibit 1.

seeking pretrial detention of SANCHEZ, and requested a three (3)-day extension to prepare for the detention hearing.

10.      On July 28, 2015, SANCHEZ appeared with undersigned counsel for the detention hearing.[3]  United States Magistrate Judge William C. Turnoff granted the Government's motion for pretrial detention, citing both risk of flight and danger to the community.  (See D.E. 15); (Exhibit 2, at 9).  SANCHEZ has remained in custody since that time.

11.      On August 3, 2015, co-defendant Isabel C. Sanchez was released on a $500,000.00 personal surety bond.  (D.E. 22).

### C.   Probation Revocation Proceedings in the District of Columbia, and Impact on the Instant Matter

12.      On September 11, 2015, as a result of his alleged conduct in the instant matter, the Government filed a Motion to Revoke SANCHEZ' probation in his previous case.  (See Case No. 1:10-cr-00105, D.E. 40).

13.      On October 14, 2015, United States District Judge Gladys Kessler Ordered that the U.S. Marshals Service produce Defendant in the United States District Court for the District of Columbia for a Probation Revocation hearing.  (Id., D.E.41).

14.      On or about October 28, 2015, Defendant was taken from FDC Miami by the United States Marshals Service and transported for purposes of the revocation of probation hearing in the District of Columbia.

15.      On October 28, 2015, Defendant filed in the instant matter his first Unopposed Motion for Additional Time to File Pre-Trial Motions, (D.E. 37), the basis for same being Defendant's inability to communicate with undersigned counsel as a result of the aforementioned

---

[3] A transcript of the Detention Hearing is attached hereto as Exhibit 2.

interstate travel, which the Court granted on November 2, 2015. (D.E. 38).

16.     On November 10, 2015, Defendant filed in the instant matter his Second Motion for Additional Time to File Pre-Trial Motions, (D.E. 39), explaining that because Defendant remained out of State, Defendant was still unable to communicate with counsel, and further that Defendant's copy of the discovery in the instant matter had been confiscated from him upon his departure from FDC Miami.

17.     On November 12, 2015, in an effort to prevent further interference between Defendant's two cases, counsel for the Government and Defendant jointly filed a Motion to Continue Probation Revocation Hearing in the District Court for the District of Columbia, which, that same day, was granted by District Judge Gladys Kessler. The Order provides that the Parties are to jointly file a Status Report, after the instant matter is resolved, informing the Court how the Parties wish to proceed.

18.     On November 30, 2015, Defendant was returned to the Southern District of Florida, at FDC Miami.

**D.  Status of Discovery**

19.     On Wednesday December 2, 2015, following a hearing before this Court on Defendant's Second Motion for Additional Time to File Pre-Trial Motions, in an effort to replace Defendant's copy of the Government's discovery (which was apparently confiscated and/or lost by the U.S. Marshals service when transferring Defendant out of State), the undersigned hand-delivered to BOP Officer Moore at FDC Miami a sealed envelope containing one (1) DVD, to be provided to Defendant. The content of the DVD included an electronic copy of the Government's discovery in this cause.

20.     On December 7, 2015, the undersigned was notified by SANCHEZ via e-mail that

4

he had still, at that time, not received the discovery provided by the undersigned on December 2, 2015.

## II.  MOTION TO REVOKE PRETRIAL DETENTION ORDER

SANCHEZ moves this Court, pursuant to 18 U.S.C. § 3145(b), to revoke SANCHEZ' pretrial detention order, and thereafter impose a reasonable bond with appropriate restrictions. Specifically, SANCHEZ proposes that he be granted pretrial release pursuant to following proposed bond and pretrial release conditions:

- $500,000 personal surety bond, to be co-signed by no less than six (6) financially responsible friends and/or family members, secured by:

    - o   Two (2) certificates of deposit owned by Defendant's brother-in-law, Enrique Primilles, the total value of which exceeds $200,000.00;

    - o   Defendant's daughter, Anais Sanchez' equity in her condominium, which exceeds $200,000.00;

- Twenty-four (24) hour home confinement;

- Electronic monitoring;

- Not engage in any financial transactions whatsoever; and

- Permission to leave his home to be obtained from Pretrial Services, and then only to attend Church, see his healthcare providers, and his attorneys of record in this case, Joel Hirschhorn and Alexander Strassman.

## III.  MEMORANDUM OF LAW

### A.  Jurisdiction

An 18 U.S.C. § 3145(b) Motion  seeking review of a magistrate judge's pretrial detention order must be heard by the district judge assigned to the case, it may not be heard by a magistrate

judge.  See United States v. King, 849 F.2d 485, 490 (11th Cir. 1988) ("the district court must conduct an independent review to determine whether . . . pretrial detention is necessary."); United States v. Johnson, 858 F. Sup.. 119, 122 (N.D. Ind. 1994) ("It is clear from the working of Section 3145(a) that 'a court having original jurisdiction over the offense' must be interpreted as the district judge assigned to the case.").

## B.  Standard of Review

Upon the filing of a Motion to revoke a magistrate judge's pretrial detention order, pursuant to 18 U.S.C. § 3145(b), "the district court must conduct an independent review to determine whether the magistrate properly found that pretrial detention is necessary." King, 849 F.2d at 490; United States v. Burstyn, 2005 WL 2297605, at *2 (S.D. Fla. Mar. 18, 2005) ("Review of the magistrate judge's decision is de novo.") (citing King, 849 F.2d at 490-91).

## C.  Factors Warranting Relief

Revocation of the pretrial detention Order is warranted: SANCHEZ does not meet the criteria as a danger to the community pursuant to 18 U.S.C. § 3142(f)(1), and does not pose a flight risk under 18 U.S.C. § 3142(g).  The Eighth Amendment to the United States Constitution provides, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  Though the Eighth Amendment neither guarantees bail nor makes it "compulsory[,]" United States v. Salerno, 481 U.S. 739, 754, 107 S.Ct. 2095, 2105 (1987) (internal citations and quotations omitted), the outright denial of bail is an "extreme measure[.]"  United States v. Fernandez-Toledo, 737 F.2d 912, 918 (11th Cir. 1984).

The Bail Reform Act (hereinafter the "Act") "carefully limits the circumstances under which detention may be sought to the **most serious of crimes**." Salerno, 481 U.S. at 747, 107 S.Ct. at 2101 (emphasis added).  The Act "favors release of defendants awaiting trial." United States v.

6

DeBeir, 16 F. Supp. 2d 592, 593 (D. Md. 1998).   However, the Act "provides that a judicial officer shall order pretrial detention of a defendant if no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  United States v. Rodriguez, 897 F. Supp. 1461, 1463 (S.D. Fla. 1995) (citing 18 U.S.C. § 3142(e)).

"Although the Eleventh Circuit has not definitively spoken on this issue, it appears to be accepted among other courts that pursuant to the Act a detention hearing may be convened in only six situations."  United States v. Holmes, 438 F. Supp. 2d 1340, 1342 (S.D. Fla. 2005) (internal citations omitted).   The six cases are:

(1) crimes of violence (§ 3142(f)(1)(A));

(2) maximum imprisonment for life or the death penalty (§ 3142(f)(1)(B));

(3) serious drug offenses for which the maximum sentence is ten years or more (§ 3142(f)(1)(C));

(4) specially identified recidivist offenders (§ 3142(f)(1)(D));

(5) a serious risk of flight by the charged person (§ 3142(f)(2)(A)); and

(6) a serious risk of obstruction of justice (§ 3142(f)(1)(B)).

See Holmes, 438 F. Supp. 2d at 1342.

"Where detention is based on dangerousness grounds, it can be ordered only in cases involving one of the circumstances set forth in [18 U.S.C. §] 3142(f)(1)[.]"  United States v. Giordano, 370 F. Supp. 2d 1256, 1262 (S.D. Fla. 2005).   That is, cases involving a crime of violence, life term or death sentence, a drug offense, or specifically identified recidivist offenses. See id. at 1261.

"With regards to dangerousness, the Government must present clear and convincing

7

evidence that no conditions of release will reasonably assure the safety of any other person or the community." Burstyn, 2005 WL 2297605, at *2. Alternatively, regarding the risk of flight, the Government bears the burden of establishing by a preponderance of the evidence that no conditions will reasonably assure the defendant's presence at trial. Id. (citing United States v. Medina, 775 F.2d 1398, 1402 (11th Cir. 1985)).

"If there are conditions that will ensure the appropriate safeguards, then the Court must release the defendant subject to these conditions." Id. (citing 18 U.S.C. § 3142(c)). Nothing in the Act modifies the presumption of innocence. See 18 U.S.C. § 3142(j).

The instant matter "presents no crime of violence, no life term or death sentence, no drug offense," and SANCHEZ has not been convicted of any of the crimes set forth in § 3142(f)(1)(D). Giordano, 370 F. Supp. 2d at 1262. As such, he cannot be detained as a danger to the community. See id. Further, for the reasons set forth below, SANCHEZ does not pose a risk of flight pursuant to 18 U.S.C. § 3142(g). Revocation of the pretrial detention Order is warranted.

**a. SANCHEZ Cannot be Detained as  a "Danger to the Community," Pursuant to 18 U.S.C. § 3142(f)(1)**

SANCHEZ cannot be detained as a danger to the community because he does not meet the criteria for any of the offenses set forth under 18 U.S.C. § 3142(f)(1) "which will support a motion for detention." United States v. Himler, 797 F.2d 156, 160 (3d Cir. 1986); see also United States v. Ploof, 851 F.2d 7, 11 (1st Cir. 1988) ("where detention is based on dangerousness grounds, it can be ordered only in cases involving one of the circumstances set forth in § 3142(f)(1)."); United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988) ("the Bail Reform Act does not permit detention on the basis of dangerousness in the absence of risk of flight, obstruction of justice or an indictment for the offenses enumerated above.").

8

As stated supra, 18 U.S.C. § 3142(f)(1) authorizes detention on dangerousness grounds only in those cases involving a crime of violence, life term or death sentence, a drug offense, or specifically identified recidivist offenses.   Giordano, 370 F. Supp. at 1261.   Further, where a defendant does not fall within the criteria set forth under 18 U.S.C. § 3142(f)(1), "[a]ny danger which [the defendant] may present to the community may be considered only in setting conditions of release."  Himler, 797 F.2d at 160.

At the Detention Hearing at issue sub judice, the Government argued that SANCHEZ poses "a risk of flight and a risk – a financial risk to the community and should be detained."  (Exhibit 2, at 5).  The Government, however, failed to allege—nor could it—that SANCHEZ met the 18 U.S.C. § 3142(f)(1) criteria justifying detention as a danger to the community.   Nevertheless, Magistrate Judge William C. Turnoff erroneously concluded "by clear and convincing evidence [that Defendant is] a danger to the community and by a preponderance of the evidence that he is a risk of flight."  (Id. at 9).

The detention Order was entered in error: the instant matter "presents no crime of violence, no life term or death sentence, no drug offense," and SANCHEZ has not been convicted of any of the crimes set forth in § 3142(f)(1)(D).  Giordano, 370 F. Supp. 2d at 1262.  As such, SANCHEZ' pretrial detention on the basis of danger to the community is unlawful.  See id.

Moreover, to the extent that SANCHEZ' danger to the community is relevant, same "may be considered **only** in setting conditions of release."  Himler, 797 F.2d at 160 (emphasis added); see also Giordano, 370 F. Supp. 2d at 1270 (stating that Defendant's danger to the community weighs in favor "of a detention order or at least stringent conditions that would reasonable address, if possible, the danger posed" by Defendant's release).  As set forth below, pretrial release is warranted here.  This Court should consider SANCHEZ' alleged danger to the community only for

9

purposes of setting appropriate conditions of release.  See id.

**b.  SANCHEZ Cannot be Detained due to "Risk" of Flight, Pursuant to 18 U.S.C. § 3142(f)(2)(A)**

Revocation of the pretrial detention is appropriate because the Magistrate Judge applied an improper standard in pretrial detaining SANCHEZ for mere "risk of flight[,]" (Exhibit 2, at 9); (see also D.E. 15) (citing "risk of flight" as bases for "PTD[.]"), and not a "**serious** risk" of flight as required by the Bail Reform Act.  See 18 U.S.C. § 3142(f)(2)(A) (emphasis added).  Pretrial detention is only appropriate under 18 U.S.C. § 3142(f)(2)(A) where the Court finds there exists "a **serious risk** that [the defendant] will flee[.]"  Id.  It is not enough that a defendant pose a mere "risk" of flight.  See id.  SANCHEZ' pretrial detention for mere "risk" of flight is unlawful.  See id.

**c.  SANCHEZ Does not Pose a "Serious Risk" of Flight, Pursuant to 18 U.S.C. § 3142(f)(2)(A)**

SANCHEZ does not pose a serious risk of Flight, and consequently cannot be detained pursuant to 18 U.S.C. § 3142(f)(2)(A).  18 U.S.C. § 3142(g) sets forth the factors for the Court to consider when addressing a defendant's risk of flight:

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Id.

The Magistrate Judge erred in detaining SANCHEZ for posing a "Danger to the Community" under 18 U.S.C. § 3142(f), as the crimes charged sub judice do not meet the statutory criteria set forth therein.  Each factor listed above is analyzed in turn.

i.  **_The Nature and Circumstances of the Offenses, § 3142(g)(1), and Weight of the Evidence, § 3142(g)(2)_**

Count one (1) charges the defendant with conspiracy to commit wire fraud; Counts two (2) through eight (8) charge the defendant with wire fraud; Count nine (9) charges the defendant with conspiracy to commit money laundering; and, Counts ten (10) through twenty-four (24) charges the defendant with money laundering.  (See D.E. 3).  None of the offenses alleged here give rise to the rebuttable presumption of pretrial detention set forth in 18 U.S.C. § 3142(e).  Further, this matter does not involve "a crime of violence or . . . a narcotic drug" related offense.  18 U.S.C. § 3142(g)(1).

Nevertheless, Magistrate Judge Turnoff, after hearing a factual proffer from both sides, concluded:

> Now, I have applied all the factors I'm required to consider under the Bail Reform Act; all of them, so the record is clear.
>
> I will note salient factors, including the magnitude of the crime. Even by Miami standards, this is an enormous allegation; a very serious crime, which itself is an incentive to flee; the fact that there's substantial quantities of money involved at this stage on the record makes the risk of flight more likely than not.

(Exhibit 2, at 9).

SANCHEZ acknowledges that the seriousness of the allegations, and potentially lengthy period of incarceration resulting from a conviction, standing alone, ordinarily present an incentive to flee, see United States v. Al-Arian, 280 F. Supp. 2d 1345, 1358 (M.D. Fla. 2003) ("the stronger the

11

government's case, especially if the sentence will be severe, the greater a defendant's incentive to flee."), but that is not the situation here.

Regardless, that alone cannot support a pretrial detention order. To the contrary, "**more than evidence of the commission of a serious crime and the fact of a potentially long sentence [are required] to support a finding of risk of flight.**" Friedman, 837 F.2d at 50. On balance, these factors are outweighed by the others set forth under 18 U.S.C. § 3142(g).

**ii.**     ***The History and Characteristics of the Defendant***

As set forth supra, an inquiry pursuant to 18 U.S.C. § 3142(g)(3) requires analysis of a number of pertinent factors, the majority of which militate in favor of pretrial release.

***Physical Condition***

Federal Courts have recognized the obvious, but unfortunate, reality that a defendant's poor physical health often means they pose a markedly lower risk of flight. United States v. Hassanshahi, 989 F. Supp. 2d 110, 116 (D.D.C. 2013) ("If it is not medically advisable for Mr. Hassanshahi to travel from Los Angeles to D.C., it is likely not in his medical interest to flee[.]"); United States v. Wang, 2013 WL 6843003, at *3 (D. Kan. Dec. 27, 2013) (recognizing there was "some risk of flight by Defendant due to [an] ICE detainer," but holding the risk was "outweighed by, inter alia "Defendant's established family ties to the community, the age of his son, the length of time he has lived in the community, [and] his health issues[.]"); United States v. Lopez-De La Cruz, 431 F. Supp. 2d 200, 203 (D.P.R. 2006) (holding that pretrial release was warranted due, in part, to Defendant's life-long ties to the community, "health condition, and negative drug use[.]").

As the undersigned made clear at the Initial Appearance, SANCHEZ' physical condition is, to put it mildly, extremely poor. In fact, SANCHEZ' health condition is so poor that the Federal Agents who executed the search warrant upon SANCHEZ on July 17, 2015, declined to take him

into custody.  Indeed, at the Initial Appearance, United States Magistrate Judge John J. O'Sullivan

questioned the Government regarding its request for a three-day extension to prepare for a detention

hearing:

> [THE COURT]: The Eleventh Circuit says that if the Government
> asks for three days they get it in order to prepare for a [Detention
> Hearing.]
>
> [MR. STRASSMAN]: No.  Understood.  I would just want to put on
> the record that Mr. Sanchez has significant health issues which is
> why he was not taken into custody at the time that the arrest warrant
> was executed.
>
> [THE COURT]: I see.  Okay.  Is the Government familiar with that?
>
> [AUSA BERGER]: That is why - - this is a case from D.C. and we
> are running the request from D.C.  I am not familiar with the exact - -
> I know that the BOP has had issues in the past on particular health
> issues, but I'm not aware that there is anything pressing at this
> moment that I'm aware of that would - -
>
> [THE COURT]: Well, it's kind of unusual.  You tell the guy, I'm not
> going to arrest.  Come in because of health issues, and then tell him
> we are  - - you're asking for detention.

(Exhibit 1, at 4-5).

SANCHEZ, who is sixty-one (61) years old, currently suffers from coronary artery disease,

recurrent atrial fibrillation, arterial hypertension, diabetes mellitus, elevation of blood lipids, obesity

and gout.  (See Exhibits 3-4, attached hereo).  Further, as explained by cardiologist Dr. Gilbert

Concepcion, SANCHEZ has had seven (7) intracoronary stents implanted since December 14,

2014.  (See id.).  "His present cardiac condition is tenuous[,]" as he presently requires

"percutaneous coronary intervention of the right coronary artery vessel due to multiple obstructive

legions which are attributive to his current angina symptoms."  (See id.).

Unfortunately, though not unexpectedly, SANCHEZ' physical condition has worsened since

he has been taken into Federal custody.  As set forth in the medical records provided by FDC Miami, SANCHEZ' hypertension and morbid obesity has "worsened" since being pretrial detained. (See Exhibit 5, at 3).  With the exception of SANCHEZ' gout issues, all other health issues have "not improved."  (See id.).  SANCHEZ has also developed red, irritated and scaled patches of skin.[4]

Indeed, after a review of SANCHEZ' medical records, former Bureau of Prisons Deputy Director for Health Services, Phillip S. Wise, (see Exhibit 6), stated as follows:

> Mr. Sanchez's physician has indicated that Mr. Sanchez requires revascularization of one side of his heart.  Because BOP detention facilities primarily house inmates on a relatively short term basis while they complete court appearances or are awaiting designation and transfer to a longer term facility, extensive medical intervention is usually not initiated if it is medically acceptable to wait until the inmate is either released or transferred to his designated facility. This helps to ensure continuity of care and prevents delay of transfer for medical reasons if the inmate is in the middle of a major medical initiative at the time another, long term facility is designated. **In Mr. Sanchez's case, this may mean that the revascularization recommended by his physician may be postponed until he is either released or transferred to another BOP facility.**  It is noted that the medical records from BOP indicate that there is an intention to obtain a consultation with a contracted cardiologist, presumably, at least in part, to determine if that intervention can be delayed or is medically mandatory during his stay at the detention facility.

(Id. at 6:9) (emphasis added).

\*          \*          \*

> While the Bureau of Prisons facilities typically have a number of medical specialists available under contract provisions, individual access to those clinicians is limited by an administrative policy that requires multiple levels of review.  Recent changes to BOP practices have reduced the number of inmates who receive medical trips into the community to see medical specialists by approximately 10%.

(Id. at 7:11).

---

[4] The undersigned have been advised by SANCHEZ' family that, in the past, symptoms of this nature have previously been a warning sign of diabetic complications.

14

**This factor heavily weighs in favor of pretrial release.**  Hassanshahi, 989 F. Supp. 2d at 116.

### Length of Residence in the Community & Community Ties

SANCHEZ has strong ties to the Miami community, which further weighs in favor of pretrial release.  SANCHEZ is an American citizen, having lived in Miami since 1974.  See Giordano, 370 F. Supp. at 1267 (recognizing American citizenship as a factor weighing against a serious risk of flight).

Moreover, as set forth by undersigned counsel at the Detention Hearing, SANCHEZ has a wife, three sisters, three daughters, a brother-in-law and two grandchildren, all of whom live in the Miami area.  (Exhibit 2, at 8); cf. Giordano, 370 F. Supp. at 1267 (citing lack of "additional family members in the immediate area" and lack of "hav[ing] any children" as facts that "enhance in part the risk of flight[.]").

**This factor weighs in favor of pretrial release.**  See id.

### Record of Appearances

SANCHEZ' record of appearances in both this and his previous case weigh in favor of pretrial release.  As the undersigned stated at the Detention Hearing, there have been no allegations that SANCHEZ, at any point, failed to appear in Court when required to do so.  (Exhibit 2, at 6).

Indeed, as set forth supra, on July 17, 2015, SANCHEZ was arrested in connection with the instant matter but not taken into custody—he was issued a promise to appear, and did appear in Court for his Initial Appearance **six (6) days later**.  Cf. United States v. Cole, 715 F. Supp. 677, 680 (E.D. Pa. 1988) (serious risk of flight found where, inter alia, "both defendants stated to undercover agents that they would flee if they were arrested."); Giordano, 370 F. Supp. 2d at 1270 (summarizing United States v. Burstyn, No. 04-60279-CR-Zloch (S.D.Fla. Mar. 18, 2005),

"ordering detention for defendant/lawyer with long-standing community ties who counseled clients to flee prosecution, which evidences a serious intent to flee from his own prosecution[.]").

**This factor heavily weight in favor of pretrial release**.  See id.

*No Use of Aliases or Evidence of Intent to Flee*

"Relevant factors that support a serious risk [of flight] finding include the use of a number aliases, efforts to avoid arrest, or hidden assets."   Giordano, 370 F. Supp. 2d at 1264 (citing Friedman, 837 F.2d at 49).  In the instant matter, there is no evidence of use of aliases or efforts to avoid arrest.  Indeed, the Government made no such allegations at the Detention Hearing.  (See Exhibit 2); cf. United States v. Maull, 773 F.2d 1479, 1488 (8th Cir. 1985) (en banc) (affirming detention order for defendant who previously "used false identification to escape prosecution in Curacao in the Netherlands Antilles."); United States v. Kisling, 334 F.3d 734, 735 (8th Cir. 2003) (affirming pretrial detention order for defendant who (1) "evaded service of process by the Federal Trade Commission (FTC) after he observed the June 2000 FTC raid of his business from across the street[,]" (2) failed to appear for "a scheduled jury trial in a February 2001 domestic assault charge, for which a bench warrant remained outstanding at the time of the detention hearing[,] and (3) "when federal agents went to [Defendant's] apartment to serve his arrest warrant he failed to open the door, requiring agents to procure a key from the apartment manager.").

At the Detention Hearing the Government did state its "belie[f]" that SANCHEZ "has a foreign – at least one foreign bank account[.]" (Exhibit 2, at 5).  The Government's belief, however, was incorrect.  SANCHEZ did, at one point, have a bank account in the St.Kitts-Nevis-Anguilla National Bank Limited, which was opened in August, 2007, with an initial deposit of $1,470.00  As confirmed by St.Kitts-Nevis-Anguilla National Bank Limited, that account was closed last year on December 18, 2014, well before Defendant's July 17, 2015, arrest in this case, with a balance of

16

$290.82.  (See Exhibit 7, letter dated September 3, 2015).  Indeed, on September 4, 2015, the undersigned contacted counsel for the Government regarding the closure of this account, requesting that the Government provide evidence that the foreign account at issue was, in fact, still open.  To date, the Government has provided no response to that e-mail.

**This factor weighs in favor of pretrial release**.  See id.

*Lack of Financial Resources*

SANCHEZ does not have the financial resources with which to flee.  However, even if SANCHEZ did possess such assets, "[m]erely having access to significant funds is not enough; evidence of strong foreign family or business ties is necessary to detain a defendant[.]"  Giordano, 370 F. Supp. at 164 (citing United States v. Epstein, 155 F. Supp. 2d 323 (E.D. Pa. 2001); and United States v. Ishraiteh, 59 F. Supp. 2d 160 (D. Mass. 1999)).  Other than an inaccurate, present tense assertion that SANCHEZ has a foreign bank account, see supra, the Government has offered no evidence—no bank accounts, tax returns, or other financial documentation whatsoever—that SANCHEZ has access to any funds at all, let alone "significant funds[.]"  Cf id.

**This factor clearly weighs in favor of pretrial release**.  See id.

iii.   ***The Nature and Seriousness of the Danger to Any Person or the Community Posed by Defendant's Release***

Though listed as a relevant factor pursuant 18 U.S.C. § 3142(g)(4), it has been noted that "[i]n contrast to a motion for detention based on the defendant being charged with a crime of violence, evidence of dangerousness is ordinarily **not relevant** to a risk of flight detention motion."  United States v. Carter, 996 F. Supp. 260, 265 (W.D.N.Y. 1998) (emphasis added) (citing Friedman, 837 F.2d at 49; and DeBeir, 16 F. Supp. 2d at 594-95).

Nevertheless, when analyzing the nature and seriousness of danger if the defendant is

released, "[o]ne obvious consideration is whether a defendant would continue to engage in criminal acts while on bond, which acts would produce the means by which the defendant could ultimately flee the prosecution. Conversely, a second consideration is whether a defendant would flee and then engage in criminal acts to finance his flight." Giordano, 370 F. Supp. 2d at 1269-70. "There can be no question that an economic danger . . . falls under the broad umbrella of 'dangerousness' as that term is used throughout the Bail Reform Act." Id. (internal citations omitted).

Magistrate Judge Turnoff, in issuing the Pretrial Detention Order at issue, noted that SANCHEZ had violated probation in his previous case.   (Exhibit 2, at 9).   SANCHEZ acknowledges that this "ordinarily not relevant" factor, see Carter, 996 F. Supp. at 26, in isolation, weighs in favor of pretrial detention.   However, on balance, Defendant's limited prior criminal history is substantially outweighed by the other factors listed supra.   Pretrial release is warranted. See id.

## IV.   CONCLUSION

**WHEREFORE**, Defendant, **GUILLERMO SANCHEZ-BADIA**, for good cause shown, prays this Honorable Court grant this Motion to Revoke Pretrial Detention Order, for such other and further relief as may be just and proper, and impose those conditions or combination of conditions which will reasonably assure Defendant's appearance at all future Court proceedings and the financial safety of the community.

Respectfully submitted,

**GRAY ROBINSON, P.A**
Attorneys for Defendant
333 SE 2nd Avenue
Suite 3200
Miami, Florida  33131
Telephone #: (305) 416-6880
Facsimile #: (305) 416-6887
joel.hirschhorn@gray-robinson.com
alex.strassman@gray-robinson.com


By: s/Joel Hirschhorn
     JOEL HIRSCHHORN
     Florida Bar #104573


     s/Alexander Strassman
     ALEXANDER STRASSMAN
     Florida Bar No. 111788


## COMPLIANCE WITH LOCAL RULE 88.9

I HEREBY CERTIFY that I conferred in good faith with Assistant United States Attorneys Patrick Donley and William Bowne with respect to this Motion, including the aforementioned proposed bond and pretrial release conditions, who advised that the Government opposes the relief requested herein.

19

<u>**CERTIFICATE OF SERVICE**</u>

 I HEREBY CERTIFY that on December  <u>8</u>, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.


        <u>s/Joel Hirschhorn  </u>
        JOEL HIRSCHHORN