```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                           MIAMI DIVISION
                 CASE NO. 15-20545-CRIMINAL-LENARD


  UNITED STATES OF AMERICA,          Miami, Florida

            Plaintiff,               July 28, 2015

       vs.                           10:00 a.m.

  GUILLERMO SANCHEZ-BADIA,

            Defendant.               Pages 1 to 10
  _____

                         DETENTION HEARING
            BEFORE THE HONORABLE WILLIAM C. TURNOFF,
                 UNITED STATES MAGISTRATE JUDGE
            (TRANSCRIBED FROM THE DIGITAL AUDIO RECORDING)



  APPEARANCES:

  FOR THE GOVERNMENT:     WILLIAM H. BOWNE, III, ESQ.
                          UNITED STATES DEPARTMENT OF JUSTICE
                          CRIMINAL DIVISION
                          FRAUD SECTION
                          1400 New York Avenue, NW
                          Miami, Florida 33132


  FOR THE DEFENDANT:      ALEXANDER G. STRASSMAN, ESQ.
                          GRAYROBINSON, P.A.
                          333 Southeast Second Avenue
                          Suite 3200
                          Miami, Florida 33131


  TRANSCRIBED BY:         LISA EDWARDS, RDR, CRR
                          Official Court Reporter
                          United States District Court
                          400 North Miami Avenue
                          Twelfth Floor
                          Miami, Florida 33128
                          (305) 523-5499
```

```
 1   (REPORTER'S NOTE:  The digital audio recording of the
 2   proceedings began subsequent to the commencement of the
 3   hearing as follows:)
 4          THE COURT:  ...versus Guillermo Sanchez-Badia,
 5   15-20545-CR-Judge Lenard.
 6          MR. BOWNE:  Good morning, your Honor.  William Bowne on
 7   behalf of the United States.
 8          MR. STRASSMAN:  Good morning, your Honor.  Alex
 9   Strassman on behalf of Mr. Sanchez.
10          THE COURT:  Sir, your name and age, please?
11          THE DEFENDANT:  Guillermo Sanchez.  I'm 60 years old.
12          THE COURT:  All right.  Let's proceed to --
13          First of all, are you permanent, counsel?
14          MR. STRASSMAN:  No, your Honor.  We filed a temporary
15   notice of appearance.
16          THE COURT:  Well, how much time do you need?
17          MR. STRASSMAN:  We would ask for a one-week reset for a
18   report re: counsel.
19          THE COURT:  The Government's position?
20          MR. BOWNE:  No objection, your Honor.
21          THE COURT:  Okay.  So that would be, Lakeisha?
22          THE COURTROOM DEPUTY:  August 4th.
23          THE COURT:  August 4th, 2015, at 10:00 a.m., report re:
24   counsel.
25          Now, as to detention, what's the Government's
```

1  recommendation?
2          MR. BOWNE:  We're seeking detention, your Honor.
3          THE COURT:  Ready to proceed, counsel?
4          MR. STRASSMAN:  We are, your Honor.
5          THE COURT:  Proffer?
6          MR. BOWNE:  Your Honor, the Government's prepared to
7  prove that the Defendant committed the crimes charged in the
8  most recent indictment while he was serving a term of probation
9  under 10-CR-105 in front of Judge Kessler -- or "Kessler"; I'm
10 sorry -- in the District of Columbia; that additionally, he
11 violated his first term of probation by bribing a community
12 service provider, was resentenced again to probation and
13 continued participation in the criminal conduct that he's
14 charged with in this indictment.
15         This indictment involves a $42 million criminal Ponzi
16 scheme that defrauded both commercial lenders and the United
17 States through its Export-Import Bank.  During the course of
18 the Ponzi scheme, eventually there's an $11 million loss
19 suffered by both the United States and the commercial lenders
20 and their insurer; that in furtherance of the Ponzi scheme,
21 there were over 50 bank accounts that were utilized to launder
22 criminal proceeds.
23         The nature of the Ponzi scheme was Mr. Sanchez through
24 two companies that he controlled, he and his daughter, would
25 purport to have sales to companies, dummy companies that they

1   also controlled; and then when that sale and invoice was
2   created, it would be sold to a factor who would lend
3   approximately 90 percent of the value of the invoice.
4              During this process, when it came time for those
5   invoices to be paid, new purported sales would occur, and that
6   money would be then funneled through numerous bank accounts to
7   the alleged purchaser, again, a company controlled by
8   Mr. Sanchez and Co-Defendants, and then used to purchase -- to
9   pay back the factor.
10             This continued until Mr. Sanchez was sentenced, about
11  to be sentenced on his first criminal case, and then money was
12  used from the factoring scheme to pay restitution in the
13  criminal case.  That left him cash short.  They created a new
14  loan with Ex-Im Bank, received another --
15             THE COURT:  They did what with Ex-Im back?
16             MR. BOWNE:  Another loan.
17             THE COURT:  Loan?
18             MR. BOWNE:  Yes.  Yes, your Honor.
19             -- used those criminal proceeds to then pump additional
20  money into the Ponzi scheme, which allowed the lenders, the
21  commercial lenders, to continue to lend.
22             Ultimately, in this course of criminal conduct,
23  Mr. Guillermo and his co-conspirators utilized two currency
24  exchanges.  In that process, they converted over $11 million of
25  checks from companies they controlled to currency, utilized

1  approximately $10 million of that in the scheme, leaving
2  $1 million of currency unaccounted for.
3         Additionally, your Honor, we believe that Mr. Sanchez
4  is a risk of flight.  In the investigation, we've determined
5  that he has a foreign -- at least one foreign bank account in
6  St. Kitts and Nevis; that he had numerous -- we have travel
7  records indicating numerous travel to locations in South
8  America, including Bolivia, Colombia and Bogotá -- I'm
9  sorry -- one additional place, and it leaves me right now.
10         We also understand -- well, we have three cooperating
11  co-conspirators that have pled guilty and have agreed to
12  testify against Mr. Sanchez.
13         And finally, we've received the medical information
14  that was provided by defense counsel indicating that while
15  Mr. Sanchez has significant medical disorders, that his
16  continuing care only requires followup every two to three
17  months.
18         We believe that he is a risk of flight and a risk -- a
19  financial risk to the community and should be detained.
20         THE COURT:  Thank you very much, counsel.
21         MR. STRASSMAN:  Your Honor, first, I would point out
22  that of course Mr. Sanchez isn't alone in this indictment.  He
23  has two other co-conspirators, one of whom has already been
24  granted bond.  The other, there was a childbirth issue.  I
25  believe they've held off on holding the initial appearance on

1    that matter.
2         But one co-conspirator, Gustavo Giral, has already been
3    granted bond.  It was a $500,000 personal surety bond.
4         I think the real issue in this case regarding bond is
5    that Mr. Sanchez was on probation at the time that these
6    alleged incidents occurred.  But that factor alone does not
7    weigh in favor of being pretrial detained.
8         On balance, the other 18 USC 3142 factors heavily weigh
9    in favor of being pretrial released, including his physical
10   condition, which I have a copy of a summary letter here
11   provided by his primary-care physician, Dr. José Pineiro, if
12   the Court would like a copy.  The Government already has a
13   copy.
14        His family ties; his length of residence in the
15   community; his community ties and his record concerning
16   previous court proceedings.  Even though he does have that
17   previous case, including a probation issue, there's not one
18   allegation in any of those cases that he failed to appear
19   before the Court in a timely manner, including on this case.
20   When the arrest warrant was executed on July 17th, the initial
21   appearance didn't occur until July 23rd.  He doesn't even have
22   a passport.  There's just no reason to believe that he has any
23   risk to flee.
24        This isn't a crime of violence.  He has no issues with
25   drug or alcohol abuse.  And he has no financial resources other

```
 1   than a foreign bank account that the Government has alleged
 2   which -- that he has, of which we have no personal knowledge.
 3   He has no financial resources.
 4           He's on disability.  He receives $979 a month for his
 5   disability.  And he lives with his daughter, his wife and his
 6   mother-in-law.  His daughter and his wife are here present
 7   today.
 8           THE COURT:  We thank them for coming in.  It's very
 9   important, and it's on the record that he had the family
10   members here present supporting him.
11           Anything else?
12           MR. STRASSMAN:  Well, your Honor, just to emphasize his
13   health condition, which we believe is especially important for
14   his pretrial release:  He doesn't -- it's true, as the summary
15   letter provides, he needs followup appointments every two to
16   three months.  But when we were last here last week for his
17   initial appearance, we put on the record the fact that he has
18   significant health issues.  And I provided a copy of his
19   medications list to the US Marshals Service, who I'm sure did
20   everything in their power to make sure that he did in fact get
21   those medications.  It took him two days before he got his
22   medications.  He was sitting in jail for two days without
23   medications.
24           He has, I believe, six stents in his heart, seven
25   stents in his heart.  Those medications are required to make
```

```
 1  sure that his heart -- the valves don't close up, that he has a
 2  serious medical complication.  As a result, it's really
 3  important that he have the ability to have --
 4            THE COURT:  With respect to any medical situation, I'm
 5  making clear that the Government should assist you in working
 6  with the marshals and the Department of Corrections to assure
 7  that he's getting whatever medication that he needs.  Okay?
 8  That's part of being -- representing the United States.
 9            Be the assistants there in dealing with your brother
10  agency.  Okay?
11            MR. STRASSMAN:  Okay.
12            THE COURT:  I want to make that clear no matter what
13  happens here.
14            MR. STRASSMAN:  Thank you, your Honor.
15            And also, just a little bit more detail in terms of his
16  connections to the community:  He's been living in Miami since
17  1974.  He has three sisters, three daughters, his wife, his
18  brother-in-law and two grandchildren, all of whom live in
19  Miami.
20            He really does not pose a flight risk.  He doesn't have
21  his passport, as I mentioned before.  He simply does not pose a
22  flight risk.  There's no evidence to that effect.
23            THE COURT:  Thank you, counsel.  And let me commend you
24  on the record for outstanding argument.  And you've argued
25  everything that you possibly can argue under the circumstances.
```

1  Your client's well represented.
2          Now, I have applied all the factors I'm required to
3  consider under the Bail Reform Act; all of them, so the record
4  is clear.
5          I will note salient factors, including the magnitude of
6  this crime.  Even by Miami standards, this is an enormous
7  allegation; a very serious crime, which itself is an incentive
8  to flee; the fact that there's substantial quantities of money
9  involved at this stage on the record makes the risk of flight
10 more likely than not.
11         There's a salient factor that he's violated his
12 probation in the past.
13         When you're on probation, that's a court order.  And
14 when you don't follow everything you're supposed to do as
15 conditions of probation, that's violations of the court order.
16 It's an insult to the Court.  It shows lack of responsibility
17 and respect for the Court.
18         So those are salient factors that I'm just noting for
19 the record.
20         But I've applied all the conditions under the Bail
21 Reform Act I'm required to consider.
22         And on this record, it's not even a close question.  I
23 find by clear and convincing evidence he's a danger to the
24 community and by a preponderance of the evidence that he is a
25 risk of flight.

```
 1              He will be detained.
 2              Thank you very much.
 3              MR. BOWNE:  Thank you, your Honor.
 4              MR. STRASSMAN:  Thank you, your Honor.
 5              (Proceedings concluded.)
 6
                          C E R T I F I C A T E
 7

 8         I hereby certify that the foregoing is an
 9    accurate transcription of the proceedings in the
10    above-entitled matter.
11
12
                             /s/Lisa Edwards
13    _____           LISA EDWARDS, RDR, CRR
         DATE                Official Court Reporter
14                           United States District Court
                             400 North Miami Avenue, Twelfth Floor
15                           Miami, Florida 33128
                             (305) 523-5499
16
17
18
19
20
21
22
23
24
25
```