UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-20545- CR-LENARD

UNITED STATES OF AMERICA,

vs.

GUILLERMO A. SANCHEZ-BADIA (1),

              Defendant.
_____/

## GOVERNMENT'S RESPONSE TO DEFENDANT SANCHEZ' MOTION TO REVOKE PRETRIAL DETENTION OFDER AND INCORPORATED MEMORANDUM OF LAW

### Factual History

Guillermo Sanchez-Badia is charged with conspiracy to commit wire fraud, wire fraud, conspiracy to commit money laundering, and money laundering.  The magistrate judge ordered Sanchez to be detained pending trial because, due to his penchant for committing crimes while on probation and violating conditions of release, he could not be trusted to abide by any conditions of release.  Sanchez now seeks that this detention order be revoked.

This is not Mr. Sanchez' first encounter with law enforcement.  Before the fraud underlying the instant litigation, he plead guilty in the District of Columbia to a similar conspiracy.  In order to pay restitution in that case, in lieu of pursuing any legitimate employment, Mr. Sanchez created a new fraudulent scheme.  The purpose of the charged conspiracy was to defraud Factors, Lenders, and Ex-Im Bank by submitting false and fraudulent sales and shipping information to the Factors, the Lenders, and Ex-Im Bank, and misappropriating loan proceeds for the conspirators personal benefit and to further the fraud.  In this second criminal enterprise, Mr. Sanchez opened over 50 bank accounts and caused over $11

1

million in loss, with about $1.9 million attributable to the Ex-Im bank and about $9.5 million attributable to the Factors. There remains approximately $1 million in unaccounted for currency relating to this scheme. In the currently charged scheme, Mr. Sanchez conspired with his daughter, her husband, and other co-conspirators, who are not subject to detention at this time and live in very close proximity to Mr. Sanchez. Not only did defendant Sanchez commit a second crime while on probation, but he committed a crime with over forty times more loss than his previous crimes. *Compare* Information 2, 8, *United States v. Sanchez*, No. 10-cr-105 (Apr. 23, 2010) Dkt 1 (estimating $854,000 in proceeds),[1] *with* Indictment 15, July 16, 2015, Dkt 3 (estimating $41.9 million in money derived from the commission of the crime).

## Argument

Under the Bail Reform Act of 1984, a court may detain a defendant pending trial if, after a hearing (in which hearsay is admissible, *see* 18 U.S.C. § 3142(f)), the court determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(a)(4) & (e)(1). A finding of either risk of flight or danger to the community is sufficient to detain a defendant pending trial. *United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988); *see United States v. Giordano*, 370 F. Supp. 2d 1256, 1263--64 (S.D. Fla. 2005).

The United States must prove risk of flight by a preponderance of the evidence and danger to the community by clear and convincing evidence. *See United States v. Quartermain*e, 913 F.2d 910, 915 (11th Cir. 1990); *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985) (holding that government's burden of proof on the question of risk of flight is governed by the preponderance of the evidence standard). To determine whether a condition or combination of conditions of release will assure that the person will not flee or pose a danger to another person or the community, the court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person;

---

[1] Attachment A is the Information in *United States v. Sanchez*, No. 10-cr-105 (U.S. District Court for the District of Columbia).

2

(3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g); *accord Quartermain*e, 913 F.2d at 916; *see United States v. Holmes*, 438 F. Supp. 2d 1340, 1349--51 (S.D. Fla. 2005) (because subsection (g) of section 3142 applies to all detention hearings, all four factors must be considered in every case).

In this case, the magistrate judge correctly ordered detention because those four factors weigh in favor of detention. The magistrate judge focused heavily on Sanchez's previous probation violations and the magnitude of the crime against him, in determining that he posed a danger to the community and was a serious risk of flight. Detention Hearing Tr. 9, Dkt. 28. Indeed, in addition to violating previous probation by committing the instant crime, defendant admitted violating other terms of his supervised release. *See* Judgement on Revocation of Probation, *United States v. Sanchez*, No. 10-cr-105 (Jul. 13, 2012) Dkt. 36.[2] The actual allegation was that Sanchez bribed a member of the community service organization to falsify the number of community service hours he worked.[3] In addition, there is evidence that defendant Sanchez used some of the proceeds from the instant scheme to pay restitution to the District Court for the District of Columbia for his previous offense. Detention Hearing Tr. 4, Dkt No. 28. As a result, the magistrate judge found it "not even a close question" that Sanchez's circumstances favored detention. *Id.* at 9.

In reviewing the magistrate's decision the district court must review the case de novo, although it need not conduct a de novo hearing. *United States v. Gaviria*, 828 F.2d 667 (11th Cir. 1987). The court must, however, review all the facts presented to the magistrate. *United States v. King*, 849 F.2d 485 (11th Cir. 1988); *United States v. Hurtado*, 779 F.2d 1467 (11th Cir. 1985). *King* advised the district courts to make written findings of fact if the magistrate's decision was not adopted. District court orders granting or denying detention present mixed questions of law and fact subject to plenary review on appeal. *United*

---

[2] Attachment B is the Judgement on Revocation of Probation in *United States v. Sanchez*, No. 10-cr-105.
[3] The defense represents this as merely violations of monthly reporting and community service conditions.

*States v. Quartermaine*, 913 F.2d 910 (11th Cir. 1990).  Appellate review of detention orders is both factual and plenary.  The factual findings are reviewed under the clearly erroneous standard, the legal determinations are reviewed de novo. *United States v. Hurtado*, *supra*.

### 1. The Factors Required Under the Bail Reform Act Weigh in Favor of Detention

The magistrate judge in this case correctly found that "by clear and convincing evidence" defendant Sanchez is a danger to the community, and "by a preponderance of the evidence" he is a risk of flight. Detention Hearing Tr. 9, Dkt. 9.  Determining that no condition or combination of conditions would reasonably assure Mr. Sanchez's appearance and the safety of the community, the magistrate judge ordered detention. *Id.*; *see also* 18 U.S.C. § 1342(e)(1).  In the words of this Court, the merits of defendant Sanchez' detention are "not even a close question." Detention Hearing Tr. 9, Dkt No. 28.

The defendant has requested that this Court revoke its pretrial detention order, and "impose a reasonable bond with appropriate restrictions."  Motion to Revoke Pretrial Detention Order 5, Dkt No. 51. One cannot advocate for this Court imposing "appropriate conditions of release" where the defendant has a history of violating such conditions, guaranteeing that no conditions will reasonable assure his appearance and the safety of the community.  Defendant Sanchez has created his own third Ponzi-like scheme, paying off restitution in one case with the criminal proceeds of another crime.  The court should not allow this mockery of justice to continue.  The factors that the court must consider in determining whether release is appropriate weigh heavily in favor of detention.  *See* 18 U.S.C. § 3142(g)(1)–(4).

#### a. The Nature and Circumstances of the Offenses & Weight of the Evidence

Defendant Sanchez is charged with twenty-one felony counts. *See* Indictment, Dkt. 3.  Each carries a possible prison term of twenty years. *Id.*  The charges against Sanchez are multiple, and the evidence is overwhelming.  The grand jury's indictment "conclusively establishes probable cause to implicate [Sanchez] in a crime." *United States v. Hurtado*, 779 F.2d 1467, 1477 (11th Cir. 1985).  The

nature of defendant Sanchez's crime— defrauding the United States and other lenders for his personal benefit— corroborates the magistrate judge's finding that he cannot be trusted to abide by any conditions of pretrial release.  The alleged scheme charged against Mr. Sanchez "is a very serious crime, which itself is an incentive to flee; the fact that there's substantial quantities of money involved at this stage on the record make the risk of flight more likely than not."  Detention Hearing Tr. 9, Dkt No. 28.

Although the offenses charged do not give rise to a rebuttable presumption of pretrial detention, the circumstances here strongly support pretrial detention.  *See* 18 U.S.C. § 3142(e); Motion to Revoke Pretrial Detention 11, Dkt 51.  The defense would have this court believe that the absence of a presumption means an absence of proof, and this is not the case.  The government has satisfied its burden of persuasion showing that no condition or combination of conditions will reasonably assure defendant Sanchez's appearance and the safety of the community.  The crime alleged here is a very serious crime and the government has created a strong case against defendant Sanchez and his co-conspirators.  Not only has defendant Sanchez defrauded the United States government and private lenders of their funds, but there is evidence that he used the fruits of this scheme to pay restitution in a previous criminal matter.  This is a very serious crime indeed.  As long as the other factors lean in the favor of detention, this evidence supports the first two factors under section 3142(g).  *See Giordano*, 370 F. Supp. 2d at 1266; *see also United States v. Al-Arian*, 280 F. Supp. 2d 1345, 1358 (M.D. Fla. 2003) ("the stronger the government's case, especially if the sentence will be severe, the greater a defendant's incentive to flee"); *United States v. Almasri*, Crim. A. No. H-07-155, 2007 WL 2964780, at * 1 (S.D.Tex. Oct. 10, 2007) (finding severity of potential ten-year sentences weighed in favor of detention).

    b.  **Dangerousness, Criminal History, Record Concerning Appearance at Court Proceedings, and Whether Defendant was on Probation at the Time of the Current Offense**

The magistrate judge found that defendant Sanchez is a danger to the community based on the Government's proffer that, despite a recent conviction for a similar scheme in the District of Columbia for which he was on probation, Sanchez continued to build a new $42 million criminal Ponzi scheme that

5

defrauded both commercial lenders and the United States. Detention Hearing Tr. 3, 9, Dkt No. 28. Danger under this prong of the inquiry is not limited to physical danger. *See United States v. Provenzano*, 605 F.2d 85, 95 (3d Cir. 1979) (in assessing whether release is appropriate, courts "are not confined to considering only harms involving an aura of violence"); *see also King*, 849 F.2d at 487 n.2 ("The term 'dangerousness,' as used in the [Bail Reform Act], has a much broader construction than might be commonly understood in everyday parlance."); *United States v. Madoff*, 586 F. Supp. 2d 240, 254 (S.D.N.Y. 2009) ("there is jurisprudence to support the consideration of economic harm in the context of detention to protect the safety of the community"); *United States v. Miranda*, 442 F. Supp. 786 (S.D. Fla. 1977) (propensity to engage in drug trafficking established "danger to the community").

The defendant argues that his record of appearances in both this and his previous case weigh in favor of pretrial release. *See* Motion to Revoke Pretrial Detention at 15, Dkt 51. In an unsurprisingly quick depreciation of this necessary consideration, the defendant states that his probation violation "in isolation, weighs in favor of pretrial detention." *See* Motion to Revoke Pretrial Detention at 18, Dkt 51. Defendant further, without acknowledging the repeated, continuous, and pervasive nature of his crimes, states that his "limited prior criminal history is substantially outweighed by the other factors listed." *See* Motion to Revoke Pretrial Detention at 18, Dkt 51. This assertion is unquestionably wrong.

18 U.S.C. §3142 subsections (g)(2) and (4) require that the Court assess the defendant's criminal history and the extent of the danger posed by a defendant's release in a risk of flight analysis. If defendant Sanchez were to continue to engage in criminal acts while on bond, those acts could produce the means by which he could ultimately flee prosecution. Conversely, Mr. Sanchez might flee and then engage in criminal acts to finance his flight. *See, e.g.*, *Giordano* at 1270-71 (describing such considerations in a risk of flight analysis). There is undoubtedly a serious risk of Mr. Sanchez continuing to engage in criminal behavior while on bond, and using funds so-derived as he pleases. Mr. Sanchez has already used funds derived from the instant criminal scheme to pay restitution in a previous case. Since his criminal activity can no longer be used to clear his reputation in Florida, logically he may continue to

engage in his only source of income, criminal activity, elsewhere. "There can be no question that an economic danger, like that posed by a serial defrauder, falls under the broad umbrella of 'dangerousness' as that term is used throughout the Bail Reform Act." *Giordano*, at 1270 (citing *King*, 849 F.2d at 48).

### c. The History and Characteristics of the Defendant

#### i. Past Conduct

In avoiding use of the term "past conduct," Defendant claims that his lack of using aliases or of any evidence of his intent to flee weights in favor of pretrial release. *See* Motion to Revoke Pretrial Detention at 15, Dkt 51. Defendant Sanchez fails to address the fact that his past conduct includes committing an "insult to the Court" by engaging in criminal activity to pay restitution. Detention Hearing Tr. 9, Dkt No. 28. Although it is indeed true that a lack of alias use or evidence of intent to flee may tip the scales towards granting pretrial release, defendant Sanchez' history of violating the court's trust drags the scales much further into the realm of detention. *See United States v. Bachynsky*, No. 04-20250-CR-Jordan (S.D. Fla. May 7, 2004) (ordering detention in economic fraud case for defendant with criminal history, history of extensive foreign travel, and insufficient local community ties); *United States v. Kerns*, No. 03-80146-CR-Marra (S.D.Fla. Nov. 7, 2003) (detention ordered in economic fraud securities case where defendant "has a history of fraudulent criminal activity that spans twenty-five (25) years.... The defendant's indicted activities, therefore, do not appear to be isolated instances of misjudgment; rather, they appear part of an on-going pattern of fraudulent activity.").

#### ii. Financial Resources

Travel records and the allegations of the indictment in this case establish that he has strong foreign business ties and potential foreign bank accounts. *See* Motion to Revoke Pretrial Detention at 17, Dkt 51; *Giordano*, 370 F. Supp. At 164 ("[m]erely having access to significant funds is not enough; evidence of strong foreign family or business ties is necessary to detain a defendant[.]").

In his prior criminal case in the District of Columbia, defendant Sanchez requested and was granted permission to travel for "urgent business matters" concerning his "lumber business in Puerto Rico," arguing that it was "absolutely necessary to maintain economic support for him and his family." Motion for Permission to Travel, *United States v. Sanchez*, No. 10-cr-105, Dkt 33. Sanchez at the time owned Timber Depot, a lumber export company located in Miami, FL and Dorado, Puerto Rico. It was uncovered as a part of the instant litigation that Mr. Sanchez's "business" in Puerto Rico was in fact "work" in furtherance of his new fraudulent scheme. *Compare* Order Granting Defendant's Motion to Amend Conditions of Pre-Sentence Release, *United States v. Sanchez*, No. 10-cr-105, Dkt 14; *with* Indictment, Dkt 3. There is little proof that Sanchez has any legitimate employment or income, and defendant Sanchez makes no mention of employment in his Motion to Revoke Pretrial Detention.

As stated by the government at the pretrial detention hearing, there is still approximately $1 million in unaccounted for currency relating to this scheme and evidence that defendant Sanchez has foreign bank accounts. *See* Detention Hearing Tr. 5, Dkt No. 28. Although the defendant has claimed to have closed the one account indicated by the government thus far, defendant has not asserted that he has no other foreign assets. *See* Motion to Revoke Pretrial Detention at 17, Dkt 51 (stating that the government has not yet provided evidence of other foreign accounts). Furthermore, defendant provides no explanation as to why at the close of the St. Kitts bank account the remaining funds were wired to an account in his daughter's name. *See* Motion to Revoke Pretrial Detention Ex. 7, Dkt 51. Travel records also indicate numerous trips to various locations in South America. *See* Detention Hearing Tr. 5, Dkt No. 28. Defendant's arguments regarding any potential foreign financial resources serve only to raise additional questions, and seem to indicate their existence.

Defendant Sanchez has presented no evidence of financial resources other than those gained from his multiple criminal enterprises involving both domestic and foreign conduct and wealth. *See generally United States v. Salter*, No. 99-8110-CR-Hurley (S.D.Fla. Nov. 5, 1999) (ordering detention of defendant in economic crime case who was foreign citizen with substantial means and extensive history

8

of international travel; $5 million bond not sufficient to overcome serious risk of flight); *see also Griodano*, 370 F. Supp. 2d at 1264 (stating that "hidden assets" support a serious risk of flight). Due to his history of committing crimes on probation, the Court was correct to assume Sanchez would continue engaging in criminal acts to fund flight if given the chance.

### iii. Length of Residence in and Ties to the Community

Contrary to the defendant's assertions, Sanchez's ties to co-conspirators in the Miami area and abroad support detention. Defendant Sanchez argues that his established residence in and family ties in the Miami community should mitigate any concern about his flight or dangerousness. Although defendant does have significant family and community ties in the Miami area, the fact that a number of these ties are to his co-conspirators in this case make them certainly not the "sort of family ties from which we can infer that a defendant…cannot be driven from it by the threat of a long prison sentence." *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992), *cert. denied*, 507 U.S. 940 (1993); *see also* Indictment ¶¶ 7, 8, 10, 11, Dkt 3 (listing as co-conspirators Mr. Sanchez's daughter, son-in law, and Miami residents Jorge Amad and Ricardo Beato). Obviously this fact creates heightened concern that defendant Sanchez would remain a danger to the community and continue entering into illegal activity if released, corroborated by his history in doing exactly that. *See* Detention Hearing Tr. 9, Dkt No. 28 (describing Mr. Sanchez's commission of crimes while on probation).

Conversely, Sanchez has significant international ties that he has maintained and used in furtherance of his fraudulent activities, even while facing trial for his previous crimes. *See* Indictment, Dkt 3. This factor weighs heavily in favor of detention.

### iv. Physical Condition

Defendant's most voluminous argument in his Motion to Revoke Pretrial Detention is that his physical condition warrants pretrial release. *See* Motion to Revoke Pretrial Detention at 12–15, Ex. 3–6, Dkt No. 51. His argument here fails to establish that any conditions of release could assure defendant's

9

appearance at trial and the safety of the community.  Most cases cited by defense include those where the defendant's health was so compromised as to make travel extremely dangerous, therefore mitigating any risk of flight.  *See, e.g. United States v. Hassanshahi*, 989 F. Supp. 2d 110, 116 (D.D.C. 2013) (travel not medically advised).  Defendant Sanchez has not indicated that his health is so poor as to make travel medically contraindicated.  In fact, prior to his detention Mr. Sanchez was a frequent traveler and maintained a business in Puerto Rico.  *See* Motion for Permission to Travel for Business Purposes ¶4, *United States v. Sanchez*, No. 10-cr-105, Dkt 33 ("It is absolutely necessary to maintain economic support for [Sanchez] and his family that he be able to attend to business matters in Puerto Rico.").[4]  Defendant Sanchez' numerous fraudulent dealings in Puerto Rico and abroad preclude this Court from finding that flight is improbable based on his health situation.  *See United States v. Grigsby*, 270 Fed. Appx. 726 (10th Cir. 2008) (District court's determination that defendant charged with aggravated sexual abuse of minor in Indian country presented danger to society and risk of flight, and thus was not entitled to pretrial release, was not clearly erroneous, even though defendant was over 70 years old, had profound hearing loss, emphysema, bad eyesight, and, due to surgery, only half stomach, and had never traveled more than ten miles from his residence, where defendant had been placed in custody of his children, but he twice failed to report his custodians' violations of conditions of release.).

Despite the overwhelming evidence that the Government provided persuading the magistrate judge that detention was necessary, Sanchez nonetheless suggests that release is appropriate because his crime was not violent; he suffers from medical disorders requiring follow-up every two to three months; his passport has been seized; and he has strong business and family ties to the Miami community.  *See* Motion to Revoke Pretrial Detention at 11-18, Dkt No. 51.  Those factors, however, do not outweigh his repeated, continuous, and pervasive penchant for deceiving and defrauding the United States and its Courts.  Based on the evidence in this case, the magistrate judge was unable to trust that Sanchez would not continue to violate conditions of release and court orders as he had done in the past.  Given Sanchez's

---

[4] Attachment C is the Motion for Permission to Travel for Business Purposes.

history of "insult[s] to the Court," the magistrate judge found that no condition or combination of conditions will reasonably assure Sanchez's appearance and the safety of the community. The magistrate judge, therefore, correctly ordered Sanchez to be detained pending trial. *See* 18 U.S.C. §3142(e)(1).

### 2. Defendant's Legal Arguments are Meritless

In his motion to revoke the magistrate judge's detention order, Sanchez claims that his detention order cannot be upheld because the magistrate judge inappropriately considered Sanchez's dangerousness and relied on the wrong standard for risk of flight. Defendant's legal argument here is meritless and fails to negate the overwhelming evidence in support of the court's finding that detention is necessary.

### a. The Magistrate Judge Correctly Considered Defendant's Dangerousness in Ordering Detention

Defendant argues that he cannot be detained as a danger to the community. This argument fails because Sanchez (1) relies on case law from other circuits, and (2) even if this Circuit were to agree with his suggested statutory interpretation—which it has not—Sanchez's detention would still be warranted based on his serious risk of flight.

Federal courts do not agree on whether a defendant may be detained solely on the basis of dangerousness if the charged crime does not meet the criteria warranting a detention hearing pursuant to section 3142(f)(1). *See United States v. Holmes*, 438 F.Supp.2d 1340 (S.D.Fla.2005) (a defendant may be detained as a danger to the community or others even where the pretrial detention hearing is brought based on the statutory subsection addressing serious risk of flight); *United States v. Singleton*, 183 F.3d 7, 10-11 (D.C. Cir. 1999) (defendant may be detained on dangerousness grounds for any offense which has threatened or actual physical force as an element); *United States v. Ploof*, 851 F.2d 7 (1st Cir. 1988)

(detention authorized on dangerousness grounds only for offenses specifically articulated in 18 U.S.C. § 3142(f)(1)). The Eleventh Circuit Court of Appeals has not made a definitive statement regarding dangerousness as a consideration when no crime of violence is charged, and the Southern District of Florida in *Holmes* specifically approved of considering dangerousness as part of a flight analysis under §3142(f)(2).

Defendant Sanchez relies on case law from the First and Third circuits for the proposition that he cannot be detained as a "danger to the community" because he does not meet the criteria for the presumption of dangerousness under 18 U.S.C. §3142(f)(1). *See United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986); *United States v. Ploof*, 851 F.2d 7 (1st Cir. 1988). In doing so, the defendant ignores the holding of *Holmes*, cited in the defense motion, which states that "a defendant may be detained as a danger to the community or others even where the pretrial detention hearing is brought based on the statutory subsection addressing serious risk of flight." *Holmes*, 438 F.2d at 1340. The Court actually *must* consider the dangerousness to the defendant in considering whether any conditions of release will reasonably assure the defendant's appearance and the safety of the community. *See* 18 U.S.C. §3142(g)(4) ("the judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account…the nature and seriousness of the danger to any person or the community that would be posed by the person's relief"); *Holmes* at 1343 (noting that "it is logical to presume that Congress intended that a court specifically evaluate a defendant's dangerousness" whenever such language is used); S. Rep. No. 98-225 at 12, U.S.C.C.A.N. 1984 ("The concept of defendant dangerousness is described throughout…[the Bail Reform Act]…by" use of such language.).

The Eleventh Circuit has not specifically addressed the reach of dangerousness as a grounds for detention, but has recognized the existence of a dangerous prong "emanat[ing] from section 3142(e)['s]" use of the language regarding consideration of the "safety of any other person and the community." *United States v. King*, 849 F.2d 485, 487 (11th Cir. 1988). In *United States v. Giordano*, the court

considered whether detention on the basis of dangerousness was appropriate in a case involving only alleged economic harm, and concluded that detention on the basis of dangerousness was not permissible where the detention hearing was only brought pursuant to 18 U.S.C. §3142(f)(2)(A). 370 F. Supp.2d 1256, 1263-64 (S.D. Fla. 2005).  However, the *Giordano* court further held that it could consider the risk of danger under §3142(g)(4) in the context of the defendant's risk of flight. *Giordano*, at 1269-70.  In a more recent case in the Southern District of Florida, the court criticized *Himler* and *Ploof* as "prevent[ing] judicial officers from fully performing their role under subsection (e) when presiding over a detention hearing brought pursuant to subsection (f)(2)." *United States v. Holmes*, 438 F. Supp.2d 1340, 1350 (S.D. Fla. 2005).  The court in *Holmes*, after analyzing *Himler*, *Ploof*, and *Giordano*, concluded that "dangerousness as a grounds for detention is not excluded in cases involving detention hearings brought under (f)(2)."

> b. **Defendant Must be Detained Due to Risk of Flight Pursuant to 18 U.S.C. 3142(f)(2)(A)**

Regardless of the status of the law regarding detention based on dangerousness under 18 U.S.C. 3142(f)(2), defendant Sanchez was properly found to pose a serious risk of flight and therefore was ordered detained.  Defendant argues that he cannot be detained due to risk of flight pursuant to 18 U.S.C. § 3142(f)(2)(A), because the judge applied the improper standard in stating that defendant had a "risk of flight" as opposed to a "serious risk of flight" as required by the statute.  *See* Motion to Revoke Pretrial Detention 10, Dkt 51; *see also* 18 U.S.C. § 3142(f)(2)(A).

As recognized at the Detention Hearing and described further in Part I *supra*, the government has established by a preponderance of the evidence that Mr. Sanchez poses a risk of flight.  *See* Detention Hearing Tr. 9, Dkt. 28; *United States v. Medina*, 775 F.2d 1398 (11th Cir. 1985) (establishing preponderance of evidence standard for risk of flight analysis).  The proper standard governing the determination of risk of flight is the preponderance of evidence standard.  *See United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985) (holding that government's burden of proof on the question of risk

13

of flight is governed by the preponderance of the evidence standard); *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir.1985) (same); *United States v. Orta*, 760 F.2d 887, 891 (8th Cir.1985) (same). Defendant claims that, because at the pretrial hearing the magistrate judge used the term "risk of flight" as opposed to the statute's term "serious risk of flight," that he applied the improper standard. This is not the case. In fact, the magistrate judge correctly found that "by a preponderance of the evidence [Sanchez] is a risk of flight." Detention Hearing Tr. 9. Defendant cites no case law for the proposition that the magistrate judge's finding must use the term "serious" in conjunction with "risk off flight." In fact, no cases in this Circuit cited by the defense use the term "serious" in a risk of flight finding. *See, e.g.*, *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990) (holding that "the government presented substantial evidence of [defendant's] risk of flight"); *United States v. King*, 849 F.2d 485, 488, 491 n.3 (11th Cir. 1988) (holding that the "government established by a preponderance of the evidence that no condition or set of conditions will reasonably assure [defendant's] presence at trial" supporting a finding that the "defendant is a risk of flight"); *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985) (magistrate judge applied the proper preponderance of evidence standard in finding that defendant "posed a high risk of flight"); *United States v. Hurtado*, 779 F.2d 1467, 1479 (11th Cir. 1985) (a showing of probable cause that defendant committed an enumerated act under § 3142(f)(1) "triggers the presumption that defendant constitutes a danger to the community or poses a risk of flight from justice"). Defendant here argues for a distinction that does not exist. The standard is clear and the magistrate judge properly found that the prosecution's evidence met that standard.

There are numerous circumstances where similar defendants accused of massive economic fraud schemes have been detained due to a serious risk of flight. *See, e.g.*, *Stack v. Boyle*, 342 U.S. 1 (1951); *United States v. Madoff*, 316 Fed. Appx. 58 (2d Cir. 2009) (District Court did not clearly err in finding that 70-year old defendant presented a risk of flight; given he faced a potential sentence of 150 years, had a residence abroad, and had had ample opportunity to secret substantial resources outside the country); *United States v. Stanford*, 341 Fed. Appx. 979 (5th Cir. 2009) (defendant charged with conspiracy, mail

14

and wire fraud, securities fraud, and obstruction of Securities and Exchange Commission (SEC) investigation detained where defendant faced a potential 375 year sentence, had access to an international network of contacts, had previously concealed his travels, had established his primary residence in Antigua and Barbuda for the past 15 years, and had little family ties in Houston); *People ex rel. Parker v. Hasenauer*, 62 N.Y.2d 777, 477 N.Y.S.2d 320, 465 N.E.2d 1256 (1984) (likelihood of flight alone may be sufficient to justify the denial of bail); *United States v. Bikundi*, 47 F. Supp. 3d 131 (D.D.C. 2014) (government satisfied burden for serious flight risk based on seriousness of multimillion dollar Medicaid fraud offenses, financial resources available to defendant, and defendant's ties overseas); *United States v. Hassanshahi*, 989 F. Supp. 2d 110 (D.D.C. 2013) (defendant's repeated, continuous, and pervasive fraudulent criminal activity weighed in favor of pretrial detention). Defendant's pretrial detention is factually and legally mandated.

## Conclusion

The magistrate's determination ordering detention is firmly supported by the evidentiary record and law and should be affirmed.

|  | Respectfully submitted |
|---|---|
| WIFREDO A. FERRER<br>UNITED STATES ATTORNEY | ANDREW WEISSMANN<br>CHIEF, FRAUD SECTION,<br>CRIMINAL DIVISION |

Date: December 23, 2015

S/_____
WILLIAM H. BOWNE
Florida Bar # A5501472
Trial Attorney
PATRICK M. DONLEY
Senior Ligation Counsel
Florida Bar # A5501108
Fraud Section, Criminal Division
United States Department of Justice

**CERTIFICATE OF SERVICE**

      The undersigned certifies that on December 23, 2015, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification to the counsel of record.

      By:

      S/_____
      WILLIAM H. BOWNE