UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
Case No.: 1:15-cr-20545-JAL-1-LENARD/GOODMAN

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

GUILLERMO SANCHEZ-BADIA,

    Defendant.
_____/

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION [D.E. 52] TO DEFENDANT'S MOTION TO REVOKE PRETRIAL DETENTION ORDER AND INCORPORATED MEMORANDUM OF LAW [D.E. 51]**

Defendant, **GUILLERMO SANCHEZ-BADIA ("SANCHEZ")**, by and through his undersigned counsel, respectfully files this Reply to the Government's Response in Opposition, (D.E. 52), to Defendant Sanchez' Motion to Revoke Pretrial Detention Order, (D.E. 51), and as grounds therefor states as follows:

**MEMORANDUM OF LAW**

**A. SANCHEZ Cannot be Pretrial Detained Purely on "Dangerousness" Grounds Pursuant to 18 U.S.C. § 3142(f)(1)**

Other than a single, threadbare statement that "[t]he magistrate judge in this case correctly found by clear and convincing evidence defendant Sanchez in a danger to the community[,]" (D.E. 52:4), nowhere in its sixteen (16)-page Response does the Government mention, let alone confront, SANCHEZ' argument that he cannot be detained **solely** on the basis that he poses a danger to the community pursuant to 18 U.S.C. § 3142(f)(1) "because he does not meet the criteria for any of the offenses set forth" therein.  (See D.E. 51:8-10).

Rather than "tackle" the issue head-on, the Government attempts to "punt" on the inapplicability of 18 U.S.C. § 3142(f)(1) sub judice, by pointing to three (3) presumably conflicting

cases from different Circuits in an effort to suggest that this Court should not rule in SANCHEZ' favor because "Federal courts do not agree on whether a defendant may be detained solely on the basis of dangerousness if the charged crime does not meet the criteria warranting a detention hearing pursuant to section 3142(f)(1)." (D.E. 52:11) (citing United States v. Ploof, 851 F.2d 7 (1st Cir. 1988); United States v. Singleton, 182 F.3d 7 (D.C. Cir. 1999); United States v. Holmes, 438 F. Supp. 2d 1340 (S.D. Fla. 2005)).

But the Government is wrong: Federal Courts do agree. That is why none of the three cases cited by the Government even remotely suggest that dangerousness to the community (18 U.S.C. § 3142(f)(1)) is a valid and independent basis for pretrial detention here. In Ploof, the First Circuit clearly stated that "where detention is based on dangerousness grounds, it can be ordered **only** in cases involving one of the circumstances set forth in § 3142(f)(1)." 851 F.2d at 11 (emphasis added). Similarly, Singleton, the District of Columbia Circuit held "that § 3142(f) contemplates that offenses eligible for pretrial detention hearings are ascertainable categorically by reference to their elements, **either** because these elements entail the **use of violence**, see § 3156(a)(4)(A), or the **risk of violence**, see § 3156(a)(4)(B)." 182 F.3d at 12 (emphasis added). The instant matter, of course, involves neither the use nor risk of violence. Cf. id.

Finally, quoting directly from a headnote that is not a part of the opinion in Holmes, the Government claims that "a defendant may be detained as a danger to the community or others even where the pretrial detention hearing is brought based on the statutory subsection addressing serious risk of flight." (D.E. 52:12) (quoting Holmes, 438 F. Supp. 2d 1340). The Government's reliance on Holmes misplaced, as the holding of Holmes is far more narrow than that broad, inartfully worded headnote incorrectly suggests. Rather, in Holmes, United States Magistrate Judge James M. Hopkins "conclude[d] that dangerousness as a grounds for detention is not excluded in cases

involving detention hearings brought under [**18 U.S.C. § 3142**]**(f)(2)**[.]" Id. at 1351 (emphasis added).  In other words, Holmes held that a defendant's dangerousness to the community can only be considered within the context of detention hearings brought under risk of flight grounds (18 U.S.C. § 3142(f)(2))—not independently on dangerousness to the community grounds, pursuant to 18 U.S.C. § 3142(f)(1).

Thus, as SANCHEZ correctly set forth in his Motion, United States Magistrate Judge William C. Turnoff's order detaining SANCHEZ on the basis that he posed a danger to the community was erroneous because the instant matter "presents no crime of violence, no life term or death sentence, no drug offense," and SANCHEZ has not been convicted of any of the crimes set forth in § 3142(f)(1)(D).  (D.E. 51:8) (quoting United States v. Giordano, 370 F. Supp. 2d 1256, 1262 (S.D. Fla. 2005)).

**B.  SANCHEZ Does not Pose a Risk of Flight, Pursuant to 18 U.S.C. § 3142(f)(2)(A)**

The Government offers five (5) primary arguments as to why SANCHEZ should be detained as a flight risk pursuant to 18 U.S.C. § 3142(f)(2)(A): (1) the evidence against SANCHEZ is "overwhelming[,]" (D.E. 52:4); (2) SANCHEZ' purported dangerousness and criminal history (D.E. 52:5-7); (3) SANCHEZ' alleged financial resources (D.E. 52:7-16); (4) SANCHEZ' ties to the community (D.E. 52:9); and (5) lack of serious health condition preventing flight (D.E. 52:9-11).  As set forth below, each of these arguments is without merit.

*a.  The Government has Offered no Evidence of SANCHEZ' Guilt Sub Judice*

Citing nothing more than the Indictment and Magistrate Judge Turnoff's reliance thereon, the Government boldly and conclusively claims that "[t]he charges against Sanchez are multiple, and the evidence is overwhelming." (D.E. 52:4-5) (citing D.E. 3, 51-2). However, the Government offers no affidavits, declarations, exhibits or other evidence in support of its self-serving assessment

3

of the evidence against SANCHEZ.[1]  That is problematic, as the Eleventh Circuit has held that in attempting to meet its burden of proof within the pretrial detention context, "the government may not merely come before the trial court, present its indictment, and thereby send the defendant off to jail[.]" United States v. Hurtado, 779 F.2d 1467, 1478 (11th Cir. 1985).

Indeed, the Eleventh Circuit has held—repeatedly—that a "district court should not make factual findings based on factual assertions by counsel in legal memoranda unless those assertions are supported by affidavits, declarations, exhibits, or other evidence." Rosin v. United States, 522 F. App'x 578, 579 (11th Cir. 2013); see also United States v. Diaz-Rosado, 615 F. App'x 569, 575 (11th Cir. 2015) ("A party's mere factual assertion does not constitute reliable, specific evidence unless those facts have been admitted."); United States v. Washington, 714 F.3d 1358, 1361 (11th Cir. 2013) ("absent a stipulation or agreement between the parties, an attorney's factual assertions at a sentencing hearing do not constitute evidence that a district court can rely on.").

As such, the Government's unsubstantiated and conclusory statements regarding SANCHEZ' alleged guilt are an invalid basis for the issuance of a pretrial detention order. See id. The Government's argument to the contrary is without merit. See id.

### b. SANCHEZ' Dangerousness and Criminal History Does Not Demonstrate a Risk of Flight

Even if dangerousness can be considered within the context of a risk of flight analysis, (see supra, at 1-3); United States v. Carter, 996 F. Supp. 260, 265 (W.D.N.Y. 1998) ("[i]n contrast to a motion for detention based on the defendant being charged with a crime of violence, evidence of

---

[1] Other than the Indictment, which is not "evidence," the only other "evidence" offered by the Government in its Response is the Information from SANCHEZ' previous criminal case, (D.E. 52-1), a copy of the July 7, 2012, Judgment from SANCHEZ' probation violation in that same case, (D.E. 52-2), and SANCHEZ' June 7, 2012, Motion for Permission to Travel for Business Purposes in that same case. (D.E. 52-3).  Clearly, none of these documents demonstrate SANCHEZ' guilt in the instant matter.

dangerousness is ordinarily not relevant to a risk of flight detention motion."), neither SANCHEZ' purported dangerousness nor his criminal history suggest that he poses a risk of flight.

Indeed, other than speculate on what SANCHEZ "might" do if released, (D.E. 52:6), the Government offers no evidence that SANCHEZ has ever—in the instant matter or before—engaged in criminal conduct that has involved flight from prosecution in the past, or will motivate him to do so in the future if released.  To the contrary, SANCHEZ has never missed a Court hearing, in this or his previous criminal case.  Instead of providing sufficient evidence, see Hurtado, 779 F.2d at 1478, the Government again relies on its own conclusory recitation of the facts in an effort to demonize SANCHEZ and convince this Court that his past criminal conduct and the allegations set forth in the Indictment warrant pretrial detention.  (See 52:5) ("despite a recent conviction for a similar scheme in the District of Columbia for which he was on probation, Sanchez continued to build a new $42 million criminal Ponzi scheme that defrauded both commercial lenders and the United States.").

The Government attempts to liken SANCHEZ' conduct to that of Bernie Madoff, arguably the most notorious Ponzi-schemer in this Nation's history.  (See D.E. 52:6) (citing United States v. Madoff, 586 F. Supp. 2d 240, 254 (S.D.N.Y. 2009)).  But the Government's analogy misses the mark: Bernie Madoff, whose $170,799,000,000 Ponzi scheme[2] involved more than three-thousand, seven-hundred (3,700) times more money than the allegations against SANCHEZ, was actually granted[3] pretrial release over the Government's objection.  United States v. Madoff, 586 F. Supp. 2d

---

[2] See FBI Press Release, Jun. 9, 2009, available at https://www.fbi.gov/newyork/press-releases/2009/nyfo062909.htm.

[3] The Government compounds the incorrectness of its comparison in claiming that "[t]here are numerous circumstances where similar defendants accused of massive fraud schemes have been detained due to serious risk of flight." (D.E. 52:14) (citing, inter alia, United States v. Madoff, 316 Fed. App'x 58 (2d Cir. 2009)).  The Government, however, apparently failed to appreciate the procedural posture of the Second Circuit's opinion in Madoff, which involved "an appeal from an order of detention **pending sentencing**." Id. at 59 (emphasis added).

240, 249 (S.D.N.Y. 2009) ("this Court finds that the Government has failed to carry its burden of showing by a preponderance of the evidence that Madoff presents a serious risk of flight.").

Though undoubtedly serious, the criminal allegations alone at issue here clearly cannot warrant SANCHEZ' pretrial detention. See id.; United States v. Friedman, 837 F.2d 48, 50 (2d Cir. 1988) ("more than evidence of the commission of a serious crime and the fact of a potentially long sentence [are required] to support a finding of risk of flight.").

### c. *The Government has Failed to Offer any Evidence of Financial Resources*

In support of its claim that SANCHEZ poses a flight risk, the Government relies on a more than three (3)-year old Motion for Permission to Travel, filed by SANCHEZ in his previous criminal case, (see D.E. 52-3), and claims that "[i]t was uncovered as part of the instant litigation that Mr. Sanchez's 'business' in Puerto Rico was in fact 'work' in furtherance of his new fraudulent scheme." As it did before, the Government offers no other evidence beyond the Indictment itself. (D.E. 52:8) (citing D.E. 3). Regardless, the fact remains that United States District Judge Gladys Kessler clearly did not believe that SANCHEZ posed a flight risk, as she granted him permission to travel to Puerto Rico, (see United States v. Sanchez, No. 10-cr-105, D.E. 35), even after a Probation Violation Summons was executed on SANCHEZ. (See id. at D.E. 34). The Government's contention otherwise is based on "stale" and unpersuasive facts.

Moreover, notwithstanding direct proof, (see D.E. 51-7), that SANCHEZ' single foreign bank account has been closed for more than a year (December 18, 2014), the Government boldly "doubles down" on its original argument, first made at the Detention Hearing, that "there is"— somewhere?—"evidence that defendant Sanchez has foreign bank accounts" and that "there is approximately $1 million in unaccounted for currency related to this scheme[.]" (D.E. 52:8). As before, however, the Government offers no real evidence of any kind—direct (e.g., bank records,

tax records, wire transfers) or indirect (e.g., asset or expenditure analysis)—to support its claim that "there is" evidence the SANCHEZ possesses the vast hordes of cash it would have this Court envision. (D.E. 52:8).

Even worse, in its haste to arouse further suspicion, the Government muddies the water when it incorrectly asserts as fact that "at the close of the St. Kitts bank account the remaining funds were wired to an account in his [co-defendant] daughter's name." (Id.). But "Isabel **M** Sanchez" the recipient of the $197.34 balance is SANCHEZ' **wife**—not his daughter. (Compare D.E. 51-7, letter dated September 3, 2015) (emphasis added), (with D.E. 3, Indictment) (naming Isabel **C.** Sanchez as a co-defendant).

The Government's unsubstantiated arguments are factually inaccurate and insufficient to meet its burden of proof. See Hurtado, 779 F.2d at 1478; United States v. Burstyn, 2005 WL 2297605, at *2 (S.D. Fla. Mar. 18, 2005).

### d. *SANCHEZ' Ties to the Community Supports Pretrial Release*

Citing just one case, the Government contends that "[a]lthough defendant does have significant family and community ties in the Miami area, the fact that a number [here, exactly two] of these ties are to his co-conspirators in this case make them certainly not the 'sort of family ties from which we can infer that a defendant . . . cannot be driven from it by the threat of a long prison sentence." (D.E. 52:9) (ellipsis in original) (quoting United States v. Rueben, 974 F.2d 580, 586 (5th Cir. 1992)). The Government's reliance on Rueben, however, is misplaced, as that case involved two defendants "indicted under the Controlled Substances Act, 21 U.S.C. § 801, et seq., which triggers a rebuttable presumption under 18 U.S.C. § 3142(e) that no condition or combination of conditions will assure their appearance at trial or the safety of the community if they are released." Id. at 581. SANCHEZ, of course, has not been charged with any such crime, and there is

7

no presumption in favor of pretrial detention.  Cf. id.

Further, unlike the defendants in Rueben "whose alleged family ties w[ere] hardly more than a reflection of the drug conspiracy itself[,]" id., other than his co-defendant daughter and son-in-law, SANCHEZ has a wife, two (unindicted) daughters, a brother-in-law and two grandchildren, all of whom live in Miami, and several of whom were present in Court in support of SANCHEZ at his Detention Hearing.  (See D.E. 51-2:8-9).

In short, SANCHEZ community ties are nothing like those at issue in Rueben.  Cf. Giordano, 370 F. Supp. at 1267 (citing lack of "additional family members in the immediate area" and lack of "hav[ing] any children" as facts that "enhance in part the risk of flight[.]").  Pretrial release is warranted.  See id.

### e. *SANCHEZ' Serious Health Conditions Weigh in Favor of Pretrial Release*

The Government further claims that "Defendant Sanchez has not indicated that his health is so poor as to make travel medically contraindicated[,]" and emphasizes that "prior to his detention [he] was a frequent traveler and maintained a business in Puerto Rico." (D.E. 52:10).  Again, the Government's characterization of the facts is based on outdated information that does not paint an accurate picture of SANCHEZ' present reality.

SANCHEZ' poor physical condition is precisely the reason why he has not voluntarily[4] traveled out of State since May of 2013.  (See United States v. Sanchez, No. 10-cr-105, D.E. 38, Motion to Travel).  Indeed, SANCHEZ' cardiac health took a dramatic turn for the worse more than a year **after** his most recent trip to Puerto Rico.  (Compare id.), (with D.E. 51-3, letter dated August 20, 2015) (stating that SANCHEZ was forced to undergo "multi vessel percutaneous coronary

---

[4] As set forth in his Motion to Revoke Pretrial Detention Order, on or about October 28, 2015, Defendant was taken from FDC Miami and transported for purposes of the revocation of probation hearing in the District of Columbia. (D.E. 51:3).

8

intervention" on December 16, 2014, and again on May 28, 2015).

Indeed, it is hard to believe the Government even disputes this point considering, as noted by United States Magistrate Judge John J. O'Sullivan , (see D.E. 51-1:4-5), that SANCHEZ was not taken into custody at the time of his arrest due to the BOP's fear of health complications,  as well as the well-documented and overwhelming evidence of SANCHEZ' serious medical conditions, (D.E. 51-4; 51-5), and supporting Declaration of former Bureau of Prisons Deputy Director for Health Services, Phillip S. Wise.  (D.E. 51-9).

Pretrial release is clearly appropriate here. See  United States v. Hassanshahi, 989 F. Supp. 2d 110, 116 (D.D.C. 2013) ("If it is not medically advisable for Mr. Hassanshahi to travel from Los Angeles to D.C., it is likely not in his medical interest to flee[.]"); United States v. Wang, 2013 WL 6843003, at *3 (D. Kan. Dec. 27, 2013) (recognizing there was "some risk of flight by Defendant due to [an] ICE detainer," but holding the risk was "outweighed by, inter alia "Defendant's established family ties to the community, the age of his son, the length of time he has lived in the community, [and] his health issues[.]"); United States v. Lopez-De La Cruz, 431 F. Supp. 2d 200, 203 (D.P.R. 2006) (holding that pretrial release was warranted due, in part, to Defendant's life-long ties to the community, "health condition, and negative drug use[.]").

## CONCLUSION

**WHEREFORE**, Defendant, **GUILLERMO SANCHEZ-BADIA**, respectfully requests this Court enter an Order granting Defendant's Motion to Revoke Pretrial Detention Order, and grant such other and further relief as may be just and proper.

Respectfully submitted,

**GRAY ROBINSON, P.A**
Attorneys for Defendant
333 SE 2nd Avenue
Suite 3200
Miami, Florida  33131
Telephone #: (305) 416-6880
Facsimile #: (305) 416-6887
joel.hirschhorn@gray-robinson.com
alex.strassman@gray-robinson.com


By: s/Joel Hirschhorn
     JOEL HIRSCHHORN
     Florida Bar #104573


     s/Alexander Strassman
     ALEXANDER STRASSMAN
     Florida Bar No. 111788


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 29, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

 s/Alexander Strassman
 ALEXANDER STRASSMAN