**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**
**Case No.: 1:15-cr-20545-JAL-1-LENARD/GOODMAN**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

GUILLERMO SANCHEZ-BADIA,

    Defendant.
_____/

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS REQUEST FOR A DOWNWARD VARIANCE AND REASONABLE SENTENCE

Defendant, **GUILLERMO SANCHEZ-BADIA ("Mr. Sanchez")**, by and through undersigned counsel, files this Memorandum in Support of a Reasonable Sentence and moves this Court, pursuant to 18 U.S.C. § 3553(a), to impose a reasonable sentence, all facts and circumstances considered.

### I.     PROCEDURAL HISTORY

On July 16, 2015, an Indictment was returned against Mr. Sanchez, charging him with one (1) count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 (Count 1), seven (7) counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts 2–8), one (1) count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count 9), and fifteen (15) counts of money laundering in violation of 18 U.S.C. § 1956 (a)(1)(B)(i) (Counts 10–24). (D.E. 3). On March 21, 2016, Mr. Sanchez appeared before this Court and pled guilty to Count 1, conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, Count 2, wire fraud in violation of 18 U.S.C. § 1343, and Count 9, conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).

(D.E. 84). Mr. Sanchez was taken into custody at his initial appearance on July 23, 2015, and was Ordered to be pretrial detained on July 28, 2015. (D.E. 15). Mr. Sanchez has remained in custody since that time.

## II. ADVISORY GUIDELINES CALCULATIONS

Mr. Sanchez and the Government agree, pursuant to U.S.S.G. §§ 2S1.1(a)(1), 2B1.1(a)(1), 2B1.1(b)(1)(K), and 2B1.1(b)(10)(C), that the base offense level in this case is twenty-nine (29). (D.E. 94 at ¶ 53). Mr. Sanchez and the Government also agree that Mr. Sanchez' offense level should be increased by two (2) because of the specific characteristics of the offense. (Id. at ¶ 54). Additionally, the Government and Mr. Sanchez agree on the four (4)-level enhancement for the role played by Mr. Sanchez in the offense. (Id. at ¶ 56). Further, Mr. Sanchez and the Government agree that Mr. Sanchez' offense level should be increased by three (3) because he committed the offense while on release. (Id. at ¶ 57). Thus, Mr. Sanchez' adjusted offense level is thirty-eight (38). (Id. at ¶ 58). However, when taking into consideration a two (2)-level reduction for timely acceptance of responsibility and an additional one (1)-level reduction upon the Government's motion pursuant to U.S.S.G. § 3E1.1(b), Mr. Sanchez' total sentencing guideline level is thirty-five (35), (id. at ¶ 62), with a corresponding advisory range of 188 to 235 months' imprisonment, (Id. at ¶ 105).

## III. REQUEST FOR REASONABLE SENTENCE

Mr. Sanchez understands that he has pled guilty to serious offenses and expects to be punished for the same. However, we point out that Mr. Sanchez' punishment has already begun. As a consequence of Mr. Sanchez' actions, his daughter (co-defendant Isabel Sanchez) and son-in-law (co-defendant Gustavo Giral) became involved in the schemes at issue sub judice, pled guilty, and have been sentenced to a term of incarceration of forty-eight (48) and forty-one (41) months,

respectively. (D.E. 110, 111). The shame associated with, and the weight of, that crushing reality is beyond words.

In addition, Mr. Sanchez has been in custody for nearly one (1) year, and is in extremely poor health. Though he is only sixty-two (62) years old, given his substantial number of health ailments, Mr. Sanchez has a life expectancy of only 13.63 years. (See Exhibit 1, Actuarial Life Evaluation).

Mr. Sanchez respectfully requests that, based on the facts and circumstances of his individual case, in light of the factors enumerated in 18 U.S.C. § 3553(a), the appropriate sentence here is one well below the advisory guideline range. As this Court well knows, "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." Nelson v. United States, 555 U.S. 350, 352 (2009) (emphasis in original). That is, in part, because "[i]mposing a sentence on a fellow human being is a formidable responsibility" requiring the Court "to consider, with great care and sensitivity, a large complex of facts and factors" that cannot be "reduced to a the mechanical adding-up of a small set of numbers artificially assigned to a few arbitrarily-selected variables[.]" United States v. Gupta, 904 F. Supp. 2d 349, 350 (S.D.N.Y. 2012) aff'd, 747 F.3d 111 (2d Cir. 2014).

18 U.S.C. § 3553(a) directs the Court to impose "a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing enumerated in § 3553(a)(2). Section 3553(a) provides that "in determining the particular sentence to be imposed[,]" this Court shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A)    reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense;

      (B)      provides adequate deterrence to criminal conduct;

      (C)      protects the public from future crimes of the defendant; and

      (D)      provides the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

      a.      the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

            *      *      *      *

(5) any pertinent policy statement—

            *      *      *      *

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)-(7).

      Mr. Sanchez respectfully asks this Court to look beyond the advisory sentencing guidelines range, and focus instead on the principles pronounced by the United States Supreme Court and the factors set forth in 18 U.S.C. § 3553(a), and thereafter impose a reasonable sentence.

## IV.     MITIGATING FACTORS

### A. Grounds For Downward Variance[1]

#### 1. Physical Condition and Need for Medical Care (U.S.S.G. § 5H1.4; 18 U.S.C. § 3553(a)(2)(D))

Mr. Sanchez respectfully requests this Court vary downward from the advisory guidelines range on the basis of his poor physical condition. U.S.S.G. § 5H1.4 provides, in relevant part:

> Physical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines. **An extraordinary physical impairment may be a reason to depart downward**; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

Id. (emphasis added). Similarly, 18 U.S.C. § 3553(a)(2)(D) provides that the District Court must consider the need "to provide the defendant with needed . . . medical care[.]" Id.

A downward variance is appropriate where a defendant's "medical condition would appreciably worsen were he to be imprisoned" for an extended period of time, or where "he could not receive sufficient medical treatment for [his medical conditions] while in prison." United States v. Ivey, 307 Fed. App'x 941, 944 (6th Cir. 2009). Similarly, the Court should consider a defendant's extraordinary physical impairments when determining a reasonable sentence. See United States v. Martin, 363 F.3d 25, 49 (1st Cir. 2004). Extraordinary physical impairment exists where, due to a defendant's illness, "imprisonment would threaten or shorten a defendant's life or where the Bureau of Prisons would be unable to adequately meet the defendant's medical needs." Martin, 363 F.3d at 49 (citing United States v. LeBlanc, 24 F.3d 340, 348-49 (1st Cir. 1999)); see also United States v. Seecharan, 523 Fed. App'x 679, 681 (11th Cir. 2013) (vacating the defendant's

---

[1] Consistent with the terms of his plea agreement, Mr. Sanchez does not request a downward departure, but rather a downward variance pursuant to 18 U.S.C. § 3553. (D.E. 84 at 8).

5

sentence and remanding for resentencing where the trial court erroneously determined that the defendant "would receive necessary and effective medical care in prison").

The "prospect of intrusive surgery" to address an existing medical condition provides support for a downward departure under U.S.S.G. § 5H1.4.  See United States v. Collins, 122 F.3d 1297, 1307 (10th Cir. 1997) (affirming a downward departure for physical condition where medical records indicated that the defendant suffered "from heart disease, high blood pressure, ulcers, arthritis and prostatitis" and further showed that the defendant faced "the prospect of intrusive surgery to address his prostatitis.").  A downward departure on the basis of physical condition may be appropriate where it is clear that as a result of those infirmities, a guidelines sentence "may turn out to be a life sentence." United States v. Paradies, 14 F. Supp. 2d 1315, 1322 (N.D. Ga. 1998).

As set forth in the life expectancy calculations conducted by actuary Faye S. Albert, Mr. Sanchez' numerous and substantial health ailments result in him having a markedly shorter life expectancy.  **While the life expectancy of a healthy, non-smoker sixty-two (62) year-old is 24.94 years,  (see Exhibit 1), Mr. Sanchez has a life expectancy of only 13.63 years.  (See id.).**  As set forth below, it is more likely than not that Mr. Sanchez will die somewhere between thirteen (13) and fourteen (14) years from the present.

Life Expectancy (Years)   13.63

| Year | Prob Death EOY | Year | Prob Death EOY | Year | Prob Death EOY |
|---|---|---|---|---|---|
| 1 | 3.39% | 16 | 62.09% | 31 | 98.74% |
| 2 | 6.83% | 17 | 65.91% | 32 | 99.27% |
| 3 | 10.29% | 18 | 69.54% | 33 | 99.60% |
| 4 | 13.75% | 19 | 72.98% | 34 | 99.80% |
| 5 | 17.26% | 20 | 76.24% | 35 | 99.90% |
| 6 | 20.87% | 21 | 79.35% | 36 | 99.95% |
| 7 | 24.65% | 22 | 82.24% | 37 | 99.98% |
| 8 | 28.61% | 23 | 84.88% | 38 | 99.99% |
| 9 | 32.74% | 24 | 87.30% | 39 | 100.00% |
| 10 | 36.99% | 25 | 89.54% | | |
| 11 | 41.30% | 26 | 91.63% | | |
| 12 | 45.62% | 27 | 93.57% | | |
| 13 | 49.88% | 28 | 95.32% | | |
| 14 | 54.05% | 29 | 96.79% | | |
| 15 | 58.13% | 30 | 97.93% | | |

(See Exhibit 1).

This Court is fully informed and able to estimate Mr. Sanchez' life expectancy based on his various infirmities, and it is clear that a guidelines sentence will be more onerous for Mr. Sanchez than for most defendants. Cf. Paradies, 14 F. Supp. 2d at 1322 ("While the Court is unable to predict Defendant's life expectancy, based on his age and various infirmities, it is clear that a thirty-three month sentence is more onerous for Paradies than for most defendants."). Here, even a "low end" guidelines sentence of one hundred and eighty-eight (188) months, which translates to 15.67 years, will amount to life imprisonment.

As previously raised in his Motion to Revoke Pretrial Detention Order, (D.E. 51), Mr. Sanchez suffers from coronary artery disease, recurrent atrial fibrillation, arterial hypertension, diabetes mellitus, elevation of blood lipids, obesity, and gout. (See D.E. 51-3, 51-4). Mr. Sanchez has also had seven (7) intracoronary stents implanted since December 14, 2014. (Id.).

After reviewing Mr. Sanchez' medical records, Phillip S. Wise, former Bureau of Prisons

Deputy Director for Health Services emphasized, in pertinent part:

> While **the Bureau of Prisons** seeks to provide medically necessary care for its inmates, it **may decline to provide all medically appropriate care**. This limited scope of care applies to medications, as well as evaluations and interventions, and represents a more limited scope than is available to [Mr. Sanchez] in the community.
>
> \*         \*         \*         \*
>
> Similarly, in the community, Mr. Sanchez may self refer to a medical specialist or, if concerned, may directly contact a medical specialist such as a cardiologist, endocrinologist, or pulmonologist. While the Bureau of Prisons facilities typically have a number of medical specialists available under contract provisions, individual access to those clinicians is limited by an administrative policy that requires multiple levels of review. **Recent changes to BOP practices have reduced the number of inmates who receive medical trips into the community to see medical specialists by approximately 10%.**

(D.E. 51-6 at 6-7) (emphasis added).

Notably, in his letter dated **August 20, 2015,** cardiologist Dr. Gilbert Concepcion explained that Mr. Sanchez' "cardiac condition is tenuous" and that "further delay in providing mechanical revascularization . . . **will seriously contribute to an adverse health care outcome in which it has the certain potential of a catastrophic cardiac event**." (D.E. 51-3) (emphasis added). Since being taken into custody nearly one (1) year ago, Mr. Sanchez has received no surgical treatment whatsoever. Cf. Collins, 122 F.3d at 1307 (highlighting the "prospect of intrusive surgery as a factor supporting a downward departure pursuant to U.S.S.G. § 5H1.4).

It is clear that the combination of physical infirmities from which Mr. Sanchez suffers, and his substantially reduced life expectancy, distinguishes this case and renders it outside the heartland of those for similar offenders. A downward variance consistent with U.S.S.G. § 5H1.4 and pursuant to 18 U.S.C. § 3553(a)(2)(D) is warranted.

### 2. Acceptance of Responsibility and Remorse (18 U.S.C. § 3553(a)(1))

Mr. Sanchez also respectfully requests this Court vary downward from the advisory guidelines range on the basis of his acceptance of responsibility and remorse. As recognized in the Presentence Investigation Report, Mr. Sanchez has accepted full responsibility for his actions, and is remorseful for causing the involvement of his daughter and son-in-law in the conduct at issue here. (D.E. 94 at ¶ 50). 18 U.S.C. § 3553(a)(1) directs the Court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant[.]" Courts have recognized that a defendant's degree of remorse may be considered as a basis for a downward variance, especially where the defendant has accepted responsibility for his actions. United States v. Howe, 543 F.3d 128, 138 (3d Cir. 2008) (noting that the defendant's remorse does not have to be extraordinary); see also United States v. Crawford, 407 F.3d 1174, 1182 (11th Cir. 2005) ("We have recently held that extraordinary remorse and restitution is a discouraged but not prohibited ground for a downward departure."); United States v. Fagan, 162 F.3d 1280, 1283 (10th Cir. 1998) (holding that courts may depart downward if they find remorse present in certain circumstances); United States v. Jaroszenko, 92 F.3d 486, 490–91 (7th Cir. 1996) (holding that a court has the discretion to consider remorse as a factor supporting a downward departure). A downward variance is warranted here. See id.

### IV. CONCLUSION

"In order to impose a reasonable sentence, this Court should consider the factors of 18 U.S.C. §3553 and the specific facts surrounding the instant case." United States v. Williams, 435 F.3d 1350, 1356 (11th Cir. 2006). This Court's sentencing of Mr. Sanchez in the reasonable fashion requested is warranted here. Justice will be fairly tempered by this Court's application of our judicial system's respect for mercy in an appropriate case. This is an appropriate case. We

9

respectfully request this Court impose the following sentence: ninety-six (96) months' in the custody of the Attorney General, to be followed by three (3) years' Supervised Release.

**WHEREFORE**, Defendant, **GUILLERMO SANCHEZ-BADIA,** prays that this Honorable Court will impose the reasonable sentence "sufficient, but not greater than necessary" to achieve the goals enunciated in 18 U.S.C. § 3553(a), as requested above, and any/all additional requirements the Court deems appropriate.

Respectfully submitted,

**GRAY ROBINSON, P.A**
Attorneys for Defendant
333 SE 2nd Avenue
Suite 3200
Miami, Florida  33131
Telephone #: (305) 416-6880
Facsimile #: (305) 416-6887
joel.hirschhorn@gray-robinson.com
alex.strassman@gray-robinson.com


By: s/Joel Hirschhorn
      JOEL HIRSCHHORN
      Florida Bar #104573

       s/Alexander Strassman
       ALEXANDER STRASSMAN
       Florida Bar No. 111788

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 30, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/Joel Hirschhorn
JOEL HIRSCHHORN
