UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:15CR20545

UNITED STATES OF AMERICA,

v.

GUILLERMO A. SANCHEZ-BADIA,

Defendant.
_____/

## GUILLERMO SANCHEZ-BADIA'S RENEWED MOTION
## FOR COMPASSIONATE RELEASE (REDUCTION IN SENTENCE)

The Defendant, Guillermo Sanchez-Badia, by and through undersigned counsel, respectfully files his Renewed Motion for Compassionate Release and Reduction in Sentence and asks the Court to exercise its authority under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, and the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") (to be codified at 18 U.S.C. § 362) to modify his sentence based on his serious, debilitating physical and cognitive impairment incurred after he suffered a stroke on July 20, 2021.

### HISTORY / BACKGROUND

On March 21, 2016, Mr. Sanchez-Badia pled guilty to conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; wire fraud, in violation of 18 U.S.C. § 1343; and, conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), all non-violent crimes. On June 9, 2016, he was sentenced to a total prison term of 144 months to be followed by a 3-year term of supervised release. He was also ordered to pay total restitution in the amount of $11,503,068. (D.E. 114)

The Defendant has been incarcerated since July 23, 2015. With good conduct credits, Sanchez-Badia's release date, per the Bureau of Prisons ("BOP") website, is October 12, 2025, after serving approximately 122 months in total. According to the BOP's Program Statement on Home Confinement, a prisoner may be placed in home confinement for 6 months. Based on this Program Statement and with gain time, Sanchez-Badia would be eligible for release to a half-way house after serving a total of 116 months (85% of 144 = 122 – 6). As of January 10, 2022, he has

served approximately 77.5 out of the 116 months he would have spent in prison (more than 50% of his prison sentence).

On June 29, 2020, Defendant filed a Motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), based on the extraordinary and compelling reasons presented by the COVID-19 pandemic in light of his age (now age 67) and his failing health.[1] At that time, he suffered from chronic coronary artery disease/atherosclerotic cardiovascular disease with stents, congestive heart failure, recurrent paroxysmal arterial fibrillation, arterial hypertension, chronic obstructive pulmonary disease ("COPD"), type II diabetes mellitus (insulin dependent), hyperlipidemia, severe peripheral vascular disease, obesity and gout.[2] (D.E. 140) The Defendant subsequently asked this Honorable Court to hold that Motion in abeyance because the Bureau of Prisons had informed him of a pending transfer to home confinement. (D.E. 142) After the Bureau of Prisons eventually transferred the Defendant to home confinement on September 30, 2020, on October 2, 2020 this Court denied the Defendant's motion (D.E. 140) as moot. (D.E. 151)

On July 20, 2021, Guillermo Sanchez-Badia suffered a stroke which paralyzed the right side of his body. The stroke also damaged the left side of his brain which governs language and logic. In addition to being unable to speak clearly or coherently, Mr. Sánchez-Badia is now homebound and is unable to conduct activities of daily living such as bathing, walking or preparing his meals. He is completely dependent upon his elderly wife and healthcare workers.

Mr. Sanchez-Badia now comes before this Honorable Court and files this Renewed Motion for Compassionate Release (Reduction in Sentence) based on **his new, deteriorating and debilitating medical condition.** The Defendant asks this Court to reduce his sentence to time served. The Defendant notes, in support of this Motion, the BOP concluded in its expert judgment that release to home confinement was appropriate even before he suffered the devastating stroke.

## COMPASSIONATE RELEASE

Section 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, contains the "compassionate release" provision. That statute provides, in relevant part:

(c) Modification of an imposed term of imprisonment.—The Court may not modify a term of imprisonment once it has been imposed except that—

---

[1] Mr. Sanchez-Badia exhausted his administrative remedies within the Bureau of Prisons.
[2] The Government, in its response filed in August 2020 at D.E. 149, reported it had obtained medical records from the BOP that corroborated the Defendant's "pre-stroke" medical conditions.

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction;

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) (2019)  Prior to the First Step Act, the U.S. Sentencing Commission promulgated a policy statement permitting courts to reduce a defendant's sentence if it determines that (1) "[e]xtraordinary and compelling reasons warrant the reduction; (2) "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" and (3) "[t]he reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.³  The Sentencing Commission further provided the following Application Note regarding what may constitute "extraordinary and compelling circumstances":

> 1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) **Medical Condition of the Defendant**.—
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

---

³ The guideline has not been amended because the Commission lacks enough members.  Of the nine circuits to rule on the issue of whether the outdated guidance (guideline) is still applicable, only the Eleventh Circuit came to the conclusion that it is.

3

>   (ii) The defendant is—
>
>   > (I) suffering from a serious physical or medical condition,
>   >
>   > (II) suffering from a serious functional or cognitive impairment, or
>   >
>   > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) **Age of the Defendant**.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) **Family Circumstances**.—
>
>   > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>   >
>   > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) **Other Reasons**.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 n.1

## DISCUSSION

Federal law empowers district courts to reduce sentences for "federal prisoners facing extraordinary health conditions and other serious hardships." U.S. v. Beck, -- F. Supp. 3d --. 2019 WL 2716505 at *4 (M.D.N.C., June 28, 2019). But this judicial safety-valve came with a catch: the BOP needed to file the motion, and "rarely did so." U.S. v. Brown, 411 F. Supp. 3d 446.448 (S.D. Iowa 2019); see also Christie Thompson, Old, Sick and Dying in Shackles, The Marshall Project (Mar. 7, 2018) ("From 2013 to 2017, the Bureau of Prisons approved 6 percent of the 5,400

applications received, while 266 inmate who requested compassionate release died" before their cases could be heard by the sentencing court.)

Frustrated at the BOP's miserly approach to compassionate release, Congress acted. In 2018, it passed the First Step Act, a law aimed at " unwind[ing] decades of mass incarceration." Brown, 411 F. Supp. 3d at 447. Of the First Step Act's many reform-oriented provides, one stood out: "Increasing the Use and Transparency of Compassionate Release." This provision took away the BOP's excusive authority to file compassionate release motions, allowing defendants to file motions directly with the sentencing court. See 18 U.S.C. § 3582(c)(l)(A) (2018). Once filed, a court may reduce a defendant's sentence if three (3) criteria are met:

1)      the defendant exhausted administrative remedies by submitting a reduction request to the BOP and then waiting 30 days (or exhausting is otherwise excused);
2)      "extraordinary and compelling reasons warrant" a reduction; and
3)      the reduction is consistent with the Sentencing Commission' s other policy statements as well as the 3553(a) factors.

18 U.S.C. § 3582(c)(l)(A)(i); see also US. v. Scparta, -- F. Supp. 3d --, 2020 WL 1910481 (S.D.N.Y. April 20, 2020); see also US. v. Lucas, 2020 WL 2059735 at *2 (W.D.N.Y. April 29, 2020) (same).

*Mr . Sanchez-Badia meets each criterion*.

### 1) MR. SANCHEZ-BADIA EXHAUSTED HIS ADMINISTRATIVE REMEDIES

Mr. Sanchez-Badia began his quest for compassionate release in February 2019 based on his deteriorating health.  After being denied by the Warden, Mr. Sanchez-Badia appealed to the BOP regional and central offices; however, his appeals were denied.

Then, along came the COVID-19 global pandemic.  The Federal Bureau of Prisons website said it "significantly increased its placement of offenders on home confinement" after then-Attorney General William Barr issued a memo in March 2020 directing the bureau to prioritize releasing inmates who were deemed to have especially serious health issues that put them at higher risk for severe illness caused by COVID-19 (as authorized by the CARES Act).

Mr. Sanchez-Badia renewed his quest for a transfer to home confinement *or* a compassionate release from his sentence in March 2020, again because of his deteriorating health and especially in light of the **COVID-19** global pandemic and the severe health consequences he would face should he contract the disease while incarcerated.  He was granted a transfer to home confinement by the Bureau of Prisons and was transferred to home under the supervision of

Riverside Halfway House on September 30, 2020. His quest for a court-ordered compassionate release/reduction in sentence was stayed because he was in home confinement.

On July 20, 2021, Mr. Sanchez-Badia suffered a stroke. Subsequently, family members have been encouraged to seek a compassionate release and reduction in sentence by Riverside Halfway House staff because, they are told, neither the BOP nor halfway house are able to provide any rehabilitative or reentry training in his current medical condition.[4]

## 2) EXTRAORDINARY AND COMPELLING REASONS EXIST TO REDUCE MR. SANCHEZ-BADIA'S SENTENCE

To determine what constitutes "extraordinary and compelling circumstances," Congress tasked the Sentencing Commission with developing criteria. See 28 U.S.C. § 994(t) (noting that, for "the sentencing modification provisions in 3582(c)(l)(A))," the Commission "shall describe what should be considered extraordinary and compelling reasons"). The Commission, in turn, set out three specific categories (medical conditions, age and family circumstances), as well as a catch-all category ("other reasons"), which includes "extraordinary and compelling reason[s] other than, or in combination with," an individual's medical conditions, age, or family circumstances. See U.S. Sentencing Guidelines § 1B 1.13 cmt. n.1 (2018).

On July 20, 2021, Guillermo Sanchez-Badia suffered an acute ischemic left middle cerebral artery (MCA) stroke; and an acute ischemic left anterior cerebral artery (ACA) stroke. He was admitted to the hospital after he suffered the stroke during a stress test. He was hospitalized at Baptist Hospital of Miami. According to his discharge paperwork, attached as Exhibit 1 to this Motion, his discharge diagnosis was: MCA and ACA stroke; atrial fibrillation; history of cardioversion (a medical procedure that restores a normal heart rhythm in people with certain types of abnormal heartbeats); acute respiratory failure; coronary artery disease (CAD); chronic kidney disease; cardiomyopathy (chronic disease of the heart muscle); chronic systolic (congestive) heart failure; diabetes; gout; groin pain; hyperlipidemia; morbid obesity; OSA (obstructive sleep apnea); oropharyngeal dysphagia (difficulty initiating a swallow); paroxysmal atrial fibrillation; and peripheral artery disease.

As of November 18, 2021, the Defendant has "right side hemiparesis and residual sequela" ("hemi" means "one side" and "paresis" means "weakness" and sequela is an aftereffect of a disease, condition, or injury). He has an at-home oxygen machine, walker, wheelchair and hospital bed with hoyer lift. He cannot live independently; his activities of daily living require assistance; he has difficulty communicating, feeding himself, dressing, and washing himself. He has

---

[4] Attempts to contact Riverside Halfway House staff Candido Tejada and Adriana Del Portillo, by telephone, have been negative. Family members advised the staff have told them they not allowed to discuss a client's condition with their attorney.

difficulties in speech. He is homebound and wheelchair dependent. See Clinical Assessment by My Home Doctor, Miguel Gonzalez, attached as Exhibit 2. According to Mr. Sanchez-Badia's wife, Isabel, Mr. Sanchez-Badia is completely dependent on her and healthcare workers. For example, a hoist is needed to move the Defendant from his bed to the bathroom. He cannot walk, even with assistance or a walker.

According to the National Institute of Health, there are long-term consequences and complications (i.e. medical, musculoskeletal and psychosocial complications) resulting from a stroke. Late medical complications of stroke occur weeks to months after discharge from hospital. Some stroke survivors go on to develop these complications years after the acute stroke. These include, but are not limited to, post-stroke seizures, urinary incontinence, bowel incontinence, and cognitive impairment along with musculoskeletal and psychosocial complications; see, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7911065/. Many stroke victims develop a variety of medical, musculoskeletal and psychosocial complications months to years after a stroke. These complications can add to the original disability imposed by the stroke.

This 67-year-old defendant's current (and foreseeable) medical condition meets the criterion of § 1B1.13; in that, he is suffering from a terminal illness, or at minimum a serious physical or medical condition; he is suffering from serious functional and cognitive impairment; and this condition substantially diminishes his ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover.

A stroke patient with strong motivation, family support, medical support, or all three combined may have a higher degree of recovery. This is less likely to occur in a prison setting.

### 3) THE SENTENCING COMMISSION'S OTHER POLICIES SUPPORT A REDUCTION IN SENTENCE

When considering a compassionate release request, the Court must also find that a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(l)(A). The Policy Statement in USSG §1B1.13 suggest that, in determining whether Mr. Sanchez-Badia's sentence should be reduced, the Court should first decide whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g). USSG §1B1.13(2). Mr. Sanchez-Badia was convicted of a nonviolent offense, is 67 years old, in failing health and homebound. He poses no risk to any person or the community. In fact, he was vetted by the Bureau of Prisons before being released and transferred to home confinement, even before he suffered the stroke.

## BUREAU OF PRISON'S MEDICAL CARE

While the Bureau of Prisons seeks to provide medically necessary care for its inmates, it may decline to provide all medically appropriate care. This limited scope of care applies to medications, as well as evaluations and interventions, and represents a more limited scope than is available to Mr. Sanchez-Badia in the community. Similarly, in the community, Mr. Sanchez-Badia may self-refer to a medical specialist or, if concerned, may directly contact a medical specialist such as a cardiologist, endocrinologist, or pulmonologist. While the BOP facilities typically have a number of medical specialists available under contract provisions, individual access to those clinicians is limited by an administrative policy that requires multiple levels of review. Notably, the Defendant is currently receiving medical care in the community and is paying for his medical treatment; not the Bureau of Prisons.

## REMAINDER OF SENTENCE IMPOSED

The Defendant has served approximately 77.5 months and has approximately 39 months left to serve based on the above calculation. (Alternatively, he has 45 months left to serve as that is the amount of time between today, January 10, 2022, and his release date of October 12, 2025.) He has been on home confinement under the jurisdiction of the Bureau of Prisons since September 2021 during which he has fully complied with every requirement.

The early release to home confinement was pursuant to the CARES Act because of the COVID-19 global pandemic and the defendant's serious medical conditions causing his failing health. The Department of Justice concluded in January 2021 that, when the COVID-19 emergency ends, the Bureau of Prisons will be required to recall all prisoners placed in extended home confinement who are not otherwise eligible for home confinement under 18 U.S.C. § 624(c)(2). Having been asked to reconsider, the Department now concludes the Bureau has discretion to permit prisoners in extended home confinement to remain there. (Exhibit 3) A return to federal prison for an individual who is homebound, cognitively and physically impaired is extremely high risk. The Defendant prays this Court does not leave him subject to being returned to prison.

## CONCLUSION

The question for the Court is whether Sanchez-Badia's health conditions constitute "extraordinary and compelling" reasons warranting a reduction in sentence. As a result of a MCA and ACA stroke, the Defendant is unable to speak clearly or coherently; is homebound and is unable to conduct activities of daily living such as bathing, walking or preparing his meals; and, is completely dependent upon others. There are long-term consequences and complications (i.e.

medical, musculoskeletal and psychosocial complications) resulting from a stroke that are best treated in the community.

Accordingly, based on all of his medical conditions, Mr. Sanchez-Badia respectfully asks the Court to reduce his sentence to time-served followed by three years of supervised release. Mr. Sanchez-Badia is suitable for early release based on a record of clear institutional conduct, he has maintained clear conduct while in BOP custody at the Riverside Halfway House, his current offense is not violent, a sex offense, or terrorism related; he does not have a current detainer; and, the BOP concluded in its expert judgment that release to home confinement was appropriate even before he suffered the devastating stroke. His medical condition dictates a reduction in sentence.

Respectfully submitted,

**OSCAR S. RODRIGUEZ, LLC**
4500 S. LeJeune Road
Coral Gables, Florida 33146
Telephone: 305.445.2000
Facsimile: 305.445.9007
E-mail: osrlaw@aol.com
*/s/ Oscar S. Rodriguez*
Oscar S. Rodriguez, Esq.
F.B.N. 194325

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing notice has been electronically filed on this 10th day of January 2022, with the Clerk of Court through CM/ECF.

## **EXHIBIT LIST**

1) Baptist Hospital of Miami, Discharge Instructions, Orders and Medications, August 4, 2021

2) My Home Doctor, Clinical Assessment, November 18, 2021

3) Slip Opinion, Discretion to Continue the Home-Confinement Placements of Federal Prisoners After the COVID-19 Emergency, December 21, 2021